UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANDREW ROYER,

    Plaintiff,

v.

ELKHART CITY OF, et al.,

    Defendants.

Case No. 3:22-CV-254 JD

## OPINION AND ORDER

Defendant Elkhart County has filed a motion for judgment on the pleadings, seeking to dismiss with prejudice all counts of Plaintiff Andrew Royer's complaint as to Elkhart County. (DE 88 at 1.) Because Elkhart County does not have final policymaking authority over the decisions of deputy sheriffs, and is not vicariously liable for the conduct of deputy sheriffs, the Court will grant the motion for judgment on the pleadings.

**A.**    **Factual Background**

This Court has previously recounted the factual allegations in substantial detail and only recounts those relevant here.

In November 2002, Helen Sailor, a 94-year-old woman, was discovered dead in her apartment. (DE 1 ¶¶ 35–38.) In 2005, a jury found Andrew Royer guilty of Sailor's murder. (*Id.* ¶¶ 176, 233.) According to the Complaint, this verdict was the culmination of police officers in the Elkhart Police Department and a deputy prosecutor fabricating multiple pieces of evidence, including an involuntary confession from Royer, a coerced statement from a corroborating witness, and fingerprint evidence from a sheriff's deputy who held himself out as a former fingerprint analysis with the FBI, but who had never trained with the FBI to conduct latent

fingerprint comparisons. (*Id.* ¶¶ 5–12.) Royer alleges that the proffered fingerprint expert, Defendant Dennis Chapman, "was a deputy in the Elkhart County Sheriff's Department." (*Id.* ¶ 31.) Royer also alleges that Elkhart County employed Defendant Chapman and were "liable for all torts committed by Defendant Chapman while employed by the County of Elkhart pursuant to the doctrine of respondeat superior." (*Id.* ¶¶ 31, 33.) Royer asserts he spent nearly 17 years in prison as a result of this misconduct. (*Id.* ¶ 239.)

On March 30, 2022, Royer filed a Complaint against the City of Elkhart, several police officers in the Elkhart Police Department, Dennis Chapman, Prosecutor Vicki Becker, Elkhart County, the Elkhart County Prosecutor's Office, and the State of Indiana. While Royer brought a number of claims against other defendants, against Elkhart County he asserted the following claims:

| | |
|---|---|
| **Count I:** | Due process (42 U.S.C. § 1983) |
| **Count III:** | Deprivation of liberty without probable cause (42 U.S.C. § 1983) |
| **Count V:** | Failure to intervene (42 U.S.C. § 1983) |
| **Count VI:** | Conspiracy to deprive constitutional rights (42 U.S.C. § 1983) |
| **Count VIII:** | Americans with Disabilities Act |
| **Count IX:** | Rehabilitation Act of 1973 |
| **Count XII:** | Breach of duty in hiring, training, and supervising – negligence (state law) |
| **Count XIV:** | Breach of duty in hiring – willful and wanton conduct (state law) |
| **Count XV:** | Respondeat superior (state law) |
| **Count XVI:** | Intentional infliction of emotional distress (state law) |

(DE 1.)

Defendant Elkhart County has now moved for judgment on the pleadings on each of these claims. (DE 88.) This motion has been fully briefed and is ripe for review.

**B.     Legal Standard**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the parties have filed a complaint and answer. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when there are no disputed issues of material fact and the moving

party is entitled to judgment as a matter of law. *United Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). The standard employed to review a Rule 12(c) motion is the same standard employed when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). The Court views "the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (quotation marks and citation omitted).

In reviewing the motion, the Court is confined to the matters addressed in the pleadings. *See Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005). The pleadings include "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452 (citing Fed. R. Civ. P. 10(c)). The Court may also consider documents attached to the motion for judgment on the pleadings provided they are referred to in the Plaintiffs' complaint and are central to the Plaintiffs' claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Additionally, the Court may take judicial notice of public records such as state court documents. *Spiegel v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020).

**C.     Discussion**

Elkhart County makes three arguments in its motion for judgment on the pleadings. First, Elkhart County argues that Royer fails to state a claim against it under 42 U.S.C. § 1983. (DE 89 at 6.) Second, Elkhart County argues that Royer fails to state a claim against it under the ADA and Rehabilitation Act. (DE 89 at 8.) Third, Elkhart County argues that Royer fails to state any Indiana state-law claim. (DE 89 at 9.) The Court will address each of these arguments in turn.

   **(1)     *Failure to state a claim under 42 U.S.C. § 1983 (Counts I, III, V, and VI)***

In its motion for judgment on the pleadings, Elkhart County argues that Royer's § 1983 claims against it must be dismissed. Royer, in his response, indicates there are two viable theories of liability it is proceeding with against Elkhart County: (1) a respondeat superior theory of liability based on Defendant Chapman being a "member and agent of the Elkhart County Sheriff's Department [and] acting within the scope of his employment" when he committed the alleged constitutional violations; and (2) "under a *Monell* theory of liability, that Defendant Chapman's actions were tacitly ratified by Defendant Elkhart County." (DE 99 at 5.)

The first theory of liability is foreclosed as to Counts I, III, V, and VI because municipal liability under § 1983 may not be established with a theory of vicarious liability. *See J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020) ("Time and again the Supreme Court has reinforced the strict prohibition against allowing principles of vicarious liability to establish municipal liability under § 1983."); *Wilson v. Cook Cnty.*, 742 F.3d 775, 779 (7th Cir. 2014) ("A municipality may not be held liable under § 1983 solely because it employs a tortfeasor.").

As to the second theory of liability, under *Monell*, Royer asserts that the "allegations . . . preclude dismissal" because he "has not yet had an opportunity to secure evidence about which entity is responsible for Defendant Chapman, or who had final policymaking authority." (DE 99 at 6.) Elkhart County argues that, as a matter of law, it lacks final policymaking authority over the Elkhart County Sheriff's Department and has no control over Defendant Chapman's law enforcement duties as a deputy sheriff, and so dismissal at this stage is appropriate. (DE 89 at 5.) The Court agrees with Elkhart County.

Section 1983 provides that "[e]very *person* who . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42

U.S.C. § 1983 (emphasis added). In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), the Supreme Court held that local government entities are "persons" under § 1983 and that liability could be established where the unconstitutional action was pursuant to the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." However, the municipality could not be "held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691.

To state a claim under *Monell*, the plaintiff must plead factual content that would allow the Court to draw a reasonable inference of: (1) a municipal action; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the moving force behind the constitutional injury. *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 598 (7th Cir. 2019); *see also Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) ("In order to hold a government entity such as a municipality or county liable under section 1983, the plaintiff must demonstrate that the government entity . . . itself caused the constitutional violation at issue.").

Under the first *Monell* requirement, there are three ways a plaintiff may demonstrate the municipal action: (1) proof of an express policy causing the loss; (2) a widespread practice constituting custom or usage that caused the loss; and (3) causation of the loss by a person with final policymaking authority. *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004). Plaintiff did not allege and has not argued that there was an express policy issued by Elkhart County or a widespread custom within Elkhart County which caused constitutional violations at issue.[1]

---

[1] The Court notes that there are allegations that the City of Elkhart knew of patterns of misconduct by the Elkhart Police Department, including its "routine practice of [pursuing] wrongful convictions through reckless and profoundly flawed investigations, [providing] false evidence and reports, coerc[ing] evidence, and fail[ing] to properly supervise employees knowing that those employees were providing false evidence." (DE 1 ¶¶ 254, 262, 275.) Royer then alleges that "in this way, the municipal defendants violated Mr. Royer's rights . . . ." (*Id.* ¶ 275.) These allegations do not support that Elkhart County had a widespread practice constituting a custom causing the constitutional violations or that Elkhart County tacitly ratified the City of Elkhart's actions. First, each of those

Rather, Royer argues that Elkhart County had final policymaking authority and "tacitly ratified" Defendant Chapman's actions. (DE 99 at 5.)

"[A] plaintiff seeking to establish a § 1983 claim against a municipality based on a 'ratification' theory must allege that a municipal official with final policymaking authority approved the subordinate's decision and the basis for it." *Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998). "State law determines who legally constitutes a final policymaker." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009) (citing *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 786 (1997)); *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999) ("A person's status as a final policymaker under § 1983 is a question of state or local law."). The Court does not inquire into "whether an official is a policymaker on all matters for the municipality, but whether [he] is a policymaker 'in a particular area, or on a particular issue[.]'" *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009). Here, that issue is whether Elkhart County has authority to ratify a deputy sheriff's decision to fabricate reports and provide false testimony regarding the fingerprints, as Royer alleges. (DE 1 ¶¶ 159–180.)

In determining whether an official is a final policymaker, the Seventh Circuit has said that courts should look at: (1) whether the "official is constrained by policies of other officials or

---

allegations about routine practices of misconduct concern the Elkhart Police Department, not the Elkhart County Sheriff's Department. As a matter of law, the Elkhart Police Department has no separate legal existence apart from the City of Elkhart. *Martin v. Fort Wayne Police Dep't*, No. 1:09-CV-74-TLS, 2011 WL 781383, at *6 (N.D. Ind. Feb. 28, 2011) ("[T]he Fort Wayne Police Department has no separate legal existence apart from the City of Fort Wayne[.]"). The Complaint also specifically alleges that the "Defendant *City of Elkhart* is additionally responsible for the official polices of the Elkhart Police Department" and "is liable for all torts committed by the Defendant Officers while employed by the City of Elkhart[.]" (*Id.* ¶ 30 (emphasis added).) Finally, the Court notes that Royer does not argue in his response that there was a widespread practice of unconstitutional conduct by Elkhart County or that Elkhart County tacitly ratified the actions of the Elkhart Police Department. Accordingly, the Court finds that Royer has not alleged, and is not pursuing, a *Monell* claim based on there being a widespread practice of unconstitutional behavior by Elkhart County or tacit ratification by Elkhart County of the Elkhart Police Department's actions.

6

legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) 'whether the policy decision purportedly made by the official is within the realm of the official's grant of authority.'" *Valentino*, 575 F.3d at 676 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995). "Also helpful is an examination of not only positive law, but also the relevant customs and practice having the force of law." *Id.* (citation and quotation marks omitted).

The Court finds that Elkhart County lacks policymaking authority to ratify a deputy sheriff's decision because approving said decisions is not within the realm of authority of Elkhart County and its Board of Commissioners. Under Indiana state law, by alleging that Elkhart County has final policymaking authority, Royer is essentially arguing that the Board of Commissions of the County of Elkhart has final policymaking authority and "tacitly ratified" Chapman's actions. *See Schon v. Frantz*, 156 N.E.3d 692, 700 (Ind. Ct. App. 2020) ("[I]n legal contemplation, the board of commissioners is the county. . . . As such, Allen County is its Commissioners." (quotation marks omitted)); *Taylor v. Cnty. of Allen*, No. 1:20-CV-477-WCL-SLC, 2021 WL 3912550, at *3 (N.D. Ind. Sept. 1, 2021) ("Legally, Allen County and the Allen County Board of Commissioners are treated as the same entity.").

However, the Board of Commissioners of the County of Elkhart lacks authority over the Elkhart County Sheriff's Department and would not have had authority to "tacitly ratify" a deputy sheriff's actions. The Indiana State Constitution independently establishes the Elkhart County Sheriff's Department, which is led by an independently elected sheriff. Ind. Const. Art. VI § 2. The duties and responsibilities of a sheriff's department are established by the Indiana State legislature. Ind. Code. 36-2-13-1; *Argandona v. Lake Cnty. Sheriff's Dep't*, No. 2:06 CV 259, 2007 WL 518799, at *3 (N.D. Ind. Feb. 13, 2007). Indiana state courts have consistently

held that "county commissioners do not have control over the acts of a sheriff." *Waldrip v. Waldrip*, 976 N.E.2d 102, 119 (Ind. Ct. App. 2012) (citation and quotation marks omitted); *Hamman v. Starke Cnty., Indiana*, No. 3:18-CV-952-PPS-MGG, 2019 WL 1438294, at *2 (N.D. Ind. Apr. 1, 2019) ("Moreover, the law is well-settled that county commissioners do not have control over the acts of a sheriff.").

Given the independence of sheriff's departments under Indiana law, the Seventh Circuit has affirmed prior dismissals at the pleading stage where *Monell* claims were brought against a county in Indiana for the actions taken by that county's sheriff's department. For example, in *Estate of Drayton v. Nelson*, 53 F.3d 165, 166 (7th Cir. 1994), the Plaintiff, the Estate of Eric Drayton, claimed that Drayton had been "shot to death by deputy sheriffs of Marion County, Indiana," and brought claims against the deputy sheriffs and Marion County pursuant to 42 U.S.C. § 1983. The Seventh Circuit affirmed the lower court's decision to grant judgment on the pleadings in favor of Marion County, explaining that Marion County "cannot be blamed for any deficiency in the training or supervision of the defendant sheriffs that may have been responsible for the alleged shooting" because "Marion County has no authority over the Sheriff and his deputies." *Nelson*, 53 F.3d at 167–68. The Seventh Circuit emphasized that there was "no doubt at all about the relation between the County and the Sheriff" and that "naming . . . the county was" a mistake. *Id.*

In his response, Royer does not contest that, under Indiana law, the county does not have control over the sheriff. Rather, Royer argues that sheriff's departments are not suable entities under § 1983. (DE 99 at 8–9.) Presumably, Royer is arguing that because a sheriff's department is not suable, this means that Elkhart County must be suable. Otherwise, this argument would be irrelevant to Elkhart County's motion for judgment on the pleadings. But Royer does not provide

8

any explanation for why the sheriff's department not being suable makes the county suable. In other words, Royer provides no argument or citations supporting that the absence of suability as to the sheriff's department implies suability as to the county. Accordingly, the Court finds that argument waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .").

Even if the Court reached the merits of Royer's argument, it would find it unpersuasive. In support of his position that a sheriff's department in Indiana is not suable, Royer relies on *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). In *Sow*, the Seventh Circuit held that two Indiana police departments were not proper defendants in an action brought under § 1983, explaining that under Indiana law a "'municipal corporation' is a 'unit . . . or other separate local governmental entity that may sue and be sued,'" *Id.* (citing Ind. Code § 36-1-2-10), and that the "statutory scheme does not grant municipal *police departments* the capacity to sue or be sued." *Id.* (emphasis added) (citing *Martin v. Fort Wayne Police Dep't*, 2010 WL 4876728, at *3 (N.D. Ind. 2010)). Yet the court in *Sow* never held that a sheriff's department was not a suable entity. In fact, the case on which the Seventh Circuit relied, *Martin*, explained that precedents involving "sheriff's departments, which are separate legal entities from the counties under Indiana law," had to be distinguished from cases involving police departments. 2010 WL 4876728, at *2 ("[T]he Fort Wayne Police Department has no separate legal existence apart from the City of Fort Wayne.").

The reasoning underlying *Martin*'s holding that a police department is not a separate legal entity explains why a sheriff's department *is*, in fact, a separate legal entity that can be sued. *Martin*, 2010 WL 4876728, at *3. In *Martin*, the court first noted that its analysis of

9

whether a local government was liable under § 1983 depended "on an analysis of state law." *Id.* at 2. The court explained that there was "no provision of the Indiana Constitution that establishes a municipal chief of police as an independently elected official or a municipal police department as a separate legal entity," that "the city executive (i.e., the mayor) appoints the chief of the police department" and that the city, by statute, had power to establish departments "under the jurisdiction of the executive." *Id.* Accordingly, because the Police Department was a "division or arm of the municipality" with no "no separate legal existence apart from the" city, the Court found it was not a suable entity under § 1983.

Unlike a city police department, a sheriff's department in Indiana is independently established by the Indiana Constitution, the sheriff is elected by the voters in the county, and the sheriff is not under the jurisdiction of the city's executive. Ind. Const. Art. VI § 2 ("There shall be elected, in each county by the voters thereof, at the time of holding general elections, a . . . Sheriff . . . who shall . . . hold their offices for four years."). This independence, rooted directly in the Indiana Constitution, supports the sheriff's department being considered a separate governmental entity able to be sued. Other courts have held exactly that. *See Mahoney v. Beacon Health Ventures*, 585 F. Supp. 3d 1161, 1172–73 (N.D. Ind. 2022) ("[E]ven if the sheriff's deputies are employees of the county," the "County Police Department is a proper defendant under § 1983" because "the sheriff is independent, responsible for managing the jail, and assigns county sheriff's deputies duties."); *Marvin v. Holcomb*, No. 3:20-CV-553-MGG, 2022 WL 2952808, at *6 (N.D. Ind. July 25, 2022) ("As the sheriff is independently elected, assigns sheriff's deputies duties, and is responsible for the deputies' official acts, the Department is a proper defendant in this action.").[2] Accordingly, even if the issue of the sheriff's department

---

[2] Plaintiff cites a number of cases from federal district courts in Indiana that dismissed a sheriff's department, holding that a sheriff's department was not a suable entity: *Lamb v. Harrison Cnty. Sheriff Dep't*, No. 4:17-CV-

being a suable entity was not waived, the Court would still dismiss Royer's § 1983 claims against Elkhart County.³

In Royer's response, he also argues that Indiana's indemnification statute provides the basis for Elkhart County's liability. In support of his argument, Royer relies on *Riley v. Lake Cnty.*, which held that a county was a proper defendant where § 1983 claims were brought against sheriff's deputies and an indemnification claim was brought against the county. No. 2:17 CV 368, 2018 WL 3239732, at *1 (N.D. Ind. July 3, 2018). But there are several distinguishing factors that make *Riley*'s holding inapplicable here. First, in *Riley* no § 1983 claims were brought against the county. *Id.* Instead, the claim brought against the county was an "indemnification claim" under Indiana Code § 34-13-4-1 seeking to hold the county liable "to indemnify the deputy sheriff defendants[.]" *Id.* The court in *Riley* explicitly distinguished an indemnification claim from a *Monell* claim when finding the indemnification claim was not subject to dismissal. *Id.* at 2 ("Yet, plaintiff's indemnification claim against Lake County is not premised on *Monell* liability—it is premised on the State indemnification statute."). Here, Royer has not brought an indemnification claim against Elkhart County. Therefore, Elkhart County's liability would not be

---

0148-SEB-DML, 2017 WL 3605284, at *3 (S.D. Ind. Aug. 22, 2017); *Marks v. Indiana*, No. 1:15-CV-118, 2015 WL 4421338, at *2 (N.D. Ind. July 17, 2015); *Beiler v. Jay Cnty. Sheriff's Off.*, No. 1:11-CV-380 PS, 2012 WL 2880563, at *2 (N.D. Ind. July 13, 2012); *Fermaglich v. Indiana*, No. IP-01-1859-T/K, 2004 WL 2750262, at *21 (S.D. Ind. Sept. 29, 2004). *Lamb* relies on the Seventh Circuit's holding in *Sow*, 636 F.3d 293, but does not address the distinction between a police department and a sheriff's department under Indiana law. *Lamb*, 2017 WL 3605284. *Marks, Beiler*, and *Fermaglich* each rely on *Jones v. Bowman*, 894 F. Supp. 538 (N.D. Ind. 1988). But *Jones* predates *McMillian*, 520 U.S. 781, 786, where the Supreme Court provided guidance that, when inquiring into whether a party has final policymaking authority, the analysis depends on "state law" and that the "understanding of the actual function of a governmental official . . . will necessarily be dependent on the definition of the official's functions under relevant state law." Thus, *Marks, Beiler, Fermaglich*, and *Jones* each fail to address the distinction between a police department and a sheriff's department under Indiana law. Accordingly, the Court agrees with the holdings in *Mahoney*, 585 F. Supp. 3d at 1172 and *Marvin*, No. 3:20-CV-553-MGG, 2022 WL 2952808, at *6, which both found that the sheriff's department is a suable entity after explaining how a police department differs from a sheriff's department under Indiana law.

³ Royer has moved to amend his Complaint to add the Elkhart County Sheriff's Department as a defendant. (DE 100.) The Court does not address this motion in this order.

based on the Indiana indemnification statute. Second, even if Royer had brought an indemnification claim, the Court would dismiss it as not being ripe for review. In *Riley*, ripeness was not raised. However, indemnification claims under Indiana Code § 34-13-4-1 are not ripe "until the underlying liability has been established." *Sowell v. Dominguez*, No. 2:09 CV 47, 2011 WL 294758, at *2 (N.D. Ind. Jan. 26, 2011); *Hunter v. Long*, No. 2:15-CV-475-TLS, 2019 WL 4695463, at *5 (N.D. Ind. Sept. 26, 2019) (dismissing a "state law claim for indemnification in the event that judgment is entered against the Officers on the Plaintiff's § 1983 claims" because the claim was not ripe). Given these distinctions, *Riley*'s holding, allowing an indemnification claim to proceed against a county defendant, is inapplicable here.

As detailed above, because Elkhart County does not have control over the acts of the sheriff and the sheriff's department, and lacks authority to "tacitly ratify" said acts, the Court finds that Elkhart County does not have final policymaking authority over deputy sheriff Chapman. Put another way, Elkhart County is not a proper defendant under § 1983 because it is not responsible for setting the policies or approving the decisions of the sheriff or the sheriff's deputies. *Mahoney*, 585 F. Supp. 3d at 1172 ("A local government unit is the proper defendant under § 1983 if according to state law, the local government unit is responsible for setting the policy or custom that's alleged to violate a constitutional right.").

### (2) *Failure to state a claim under the ADA (Count VIII) and Rehabilitation Act (Count IX)*

Elkhart County next argues that the ADA and Rehabilitation Act claims asserted in Count VIII and IX against it must be dismissed because those claims hinge on the interrogation of Royer by Elkhart Police Department officers, which occurred on Elkhart Police Department premises with the alleged involvement of Prosecutor Becker. (DE 89 at 13.) According to Elkhart County, it is not responsible for any of this alleged misconduct. In his response, Royer

12

agrees that those two claims must be dismissed because Elkhart County is not liable for Prosecutor Becker's conduct or the Elkhart Police Department officers' misconduct.

Accordingly, the Court grants the motion for judgment on the pleadings as to Count VIII and IX.

### (3) Failure to state a claim against Elkhart County under state law (Counts XII, XIV, XV, and XVI)

Elkhart County next makes two arguments on why it cannot be liable for the state-law claims in Counts XII, XIV, XV, and XVI. First, Elkhart County argues that it cannot be liable for the claims in Counts XII and XIV. Those claims allege that Elkhart County was negligent in hiring, training, and supervising the sheriff's department and that Elkhart County was willful and wanton in hiring Defendant Chapman. Elkhart County argues those claims must be dismissed because it has no duty to supervise, hire, discipline, or train agents of independent offices under the Indiana Constitution. Second, Elkhart County argues that Count XV (respondeat superior) and Count XVI (intentional infliction of emotional distress) must be dismissed. Elkhart County asserts that it must be dismissed because those claims are predicated on Defendant Chapman's actions, which Elkhart County has no control over and thus cannot be held liable for under respondeat superior.

First, the Court finds that because Elkhart County has no duty to supervise, hire, discipline, or train deputy sheriffs, the claims in Counts XII and XIV against Elkhart County must be dismissed. Under Indiana statutory law, the sheriff can appoint full-time or part-time deputies and also has authority to assign these deputies' duties. Ind. Code §§ 36-8-10-4(a), 36-2-16-4. The deputy sheriffs are also subject to the "control and supervision of the sheriff." *Thompson v. Hays*, 867 N.E.2d 654, 659 (Ind. Ct. App. 2007) (reviewing the authority of the sheriff under Indiana state law). Specifically, "[d]eputy sheriffs . . . are subject to the supervision

13

and control of the sheriff in hiring, assignment of duties, and discipline or dismissal[.]" *Id.* The county does not have any control over the acts of a sheriff and its officers. *Waldrip*, 976 N.E.2d at 119 (quotation marks omitted). Accordingly, because it is the sheriff's duty, not Elkhart County's duty, to supervise, hire, discipline, and train the deputy sheriffs, the Court finds that Counts XII and XIV must be dismissed. Other district courts have similarly dismissed claims relying on a county's lack of duty over hiring, firing, and supervising the sheriff's department. *See Jones v. Lake Cnty. Sheriff's Dep't*, No. 2:11-CV-356-TLS, 2012 WL 1388369, at *2 (N.D. Ind. Apr. 18, 2012) (because "Lake County . . . does not have hiring and firing responsibility over the Sheriff or the Sheriff's agents [it] cannot be held liable as the Plaintiff's employer under Title VII"); *Hamman*, No. 3:18-CV-952-PPS-MGG, 2019 WL 1438294, at *3 ("[U]nder Indiana law, county commissioners do not have a duty to supervise, hire, discipline, or train the agents of independent offices under the state Constitution.").

     As to the second argument, the Court finds that Elkhart County is not liable for the actions of a sheriff's department under the doctrine of respondeat superior because it lacks control over the sheriff's department. Under the doctrine of respondeat superior, an employer, including a government employer, is liable for an employee's tortious acts only if those acts occurred within the scope of employment. *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018). The scope of employment "encompasses the activities that the employer delegates to employees or authorizes employees to do, plus employees' acts that naturally or predictably arise from those activities." *Id.* at 461. As mentioned previously, the County has no control over the acts of a sheriff and a sheriff's deputies. Therefore, the county cannot delegate or authorize the sheriff or a sheriff's deputies to take any actions. Elkhart County is thus not liable for the tortious conduct of deputy sheriff Chapman. *See, e.g.*, *Carver v. Crawford*, 564 N.E.2d 330, 334 (Ind. Ct.

App. 1990) (holding that respondeat superior could not be used to hold County liable because "there [was] no agency relationship between the county commissioners and the sheriff [and so] the Commissioners are not liable for" for a county sheriff's actions).

### D.     Conclusion

For reasons stated above, the Court GRANTS the motion for judgment on the pleadings and DISMISSES all claims against Elkhart County. (DE 88.) Because no claims remain against Elkhart County, it is DISMISSED from this action. All other claims remain.

SO ORDERED.

ENTERED: April 21, 2023

/s/ JON E. DEGUILIO
Chief Judge
United States District Court