IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION

| | |
|---|---|
| ANDREW ROYER, | )<br>) |
| Plaintiff, | ) Case No. 3:22-CV-254-JD-MGG<br>) |
| v. | )<br>) HON. CHIEF JUDGE HOLLY A. |
| CITY OF ELKHART, CARLTON CONWAY, MARK DAGGY, PAUL CONVERSE, PEGGY SNIDER, TODD THAYER, MICHAEL SIGSBEE, JOEL BOURDON, BRETT COPPINS, DENNIS CHAPMAN, VICKI E. BECKER, in their individual capacities, ELKHART COUNTY, the ELKHART COUNTY PROSECUTOR'S OFFICE, and the STATE OF INDIANA. | ) BRADY<br>)<br>) HON. MAG. MICHAEL G.<br>) GOTSCH, SR.<br>)<br>)<br>) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT BECKER'S MOTION FOR LEAVE TO AMEND HER ANSWER TO PLAINTIFF'S COMPLAINT**

Now come Plaintiff ANDREW ROYER, by his attorneys Loevy & Loevy, and hereby responds to Defendant Becker's Motion for Leave to Amend Her First Answer to Plaintiff's Complaint. Dckt. 174. In response, Plaintiff states as follows:

**Introduction**

Plaintiff Andrew Royer spent more than sixteen years wrongfully incarcerated for a crime he did not commit. Dckt. 1. While every wrongful conviction is tragic, Mr. Royer's is particularly heartbreaking. Mr. Royer's complaint explains in detail how his wrongful conviction was no accident. The Defendants worked in concert to frame Mr. Royer by coercing his false confession, withholding exculpatory evidence, and fabricating false evidence. While Defendant Becker and the other Defendants were aware that Mr. Royer was mentally disabled and "had the

mind of a child," they conspired with one another to psychologically coerce Mr. Royer into a false confession through two-days of intensive interrogation. Dckt. 1 at 2 (Comp. ¶ 6).

Ordinarily, an Elkhart County Deputy Prosecutor would not be involved in the interrogation of a suspect. But here, as Plaintiff's Complaint details, Defendant Becker joined Defendants from the Elkhart Police Department for Mr. Royer's interrogation. Then, for the following sixteen years, Defendant Becker concealed she was involved in the interrogation from the courts, Mr. Royer, and defense counsel. Only after Mr. Royer's exoneration did Defendant Becker inadvertently divulge her involvement during a televised interview.

Defendant Becker answered Plaintiff's Complaint on June 21, 2022. Dckt. 47. That same day, she also filed a partial motion to dismiss, which was denied in part on December 13, 2022. Dckt. 46 (Becker MTD); Dckt. 87 (MTD Opinion). Two weeks later, Defendant Becker filed a *second* Answer to Plaintiff's Complaint. Dckt. 93. Defendant Becker's Answers to the Complaint's factual allegations are contradictory. Defendant Becker's Answers are binding judicial admissions. *Buckley v. S.W.O.R.N. Prot. LLC*, No. 1:20-CV-357-HAB, 2022 WL 4598577, at *4 (N.D. Ind. Sept. 30, 2022) (holding that "Defendants' answer, which admits a complaint's allegation, constitutes a "binding judicial admission.'") Plaintiff has a right to present Defendant Becker's admissions to a jury.

At Defendant Becker's July 18, 2023, deposition, Plaintiff questioned Defendant Becker regarding the contradictory Answers. Realizing she had no good explanation for why she answered important factual allegations in contradictory ways months apart, Defendant Becker now seeks to amend her Answer to try so that a jury won't learn about it. The court should decline to permit her to do so.

In her Motion for Leave to File an Amended Answer, Defendant Becker claims that the amendment "will not prejudice the Plaintiff, as no new affirmative defenses or counterclaims are

2

included." Dckt. 174 at 3.  However, Defendant Becker is avoiding the real issue.  Indeed, Defendant Becker's changes alter this case significantly, requiring Plaintiff to retake several hours of her deposition.  Moreover, Defendant Becker does not, and cannot, provide any justification for why she waited nearly 18 months – and nearly 4 months since her deposition – to move to amend her Answer.  The circumstances of this case and Defendant Becker's inexcusable delay justify this Court denying the motion to amend in its entirety.

I. **FACTUAL BACKGROUND**

### A. Plaintiff's Complaint

Plaintiff's Complaint describes how Defendant Becker conspired with other Defendants to frame Plaintiff for a crime he did not commit.  Dckt. 1.

### B. Defendant Becker Makes Critical Admissions in Her First Answer to Plaintiff's Complaint

In her June 2022 Answer, Defendant Becker did not deny important factual allegations. In fact, in some instances, Defendant Becker made admissions to critical allegations in Plaintiff's Complaint:

- Defendant Becker did not deny that Mr. Royer was mentally disabled at the time of his arrest.  Dckt. 47 at ¶¶3, 8.

- Defendant Becker did not deny that Mr. Royer's confession was false and that ample evidence demonstrates the "falsity and unreliability of the manufactured statement." Id. at ¶10.

- Defendant Becker did not deny that Defendant Chapman's "opinion regarding the latent print was false, fabricated, and the product of undisclosed pressure by the Elkhart Police Defendants." Id. at ¶13.

- Defendant Becker did not deny that Mr. Royer "walked out of prison a fere man having served nearly half his life behind bars for a crime he did not commit." Id. at ¶18.

- Defendant Becker did not deny that Defendants "took no steps to accommodate Mr. Royer's disability prior to nor during the interrogation." Id. at ¶105.

- Defendant Becker did not deny that "[d]uring the unrecorded interrogations, Defendants Conway repeatedly fed intimate details of the crime to Mr. Royer." Id. at ¶119.

3

- Defendant Becker admitted that she as "an Elkhart County deputy prosecutor, watched the interrogation through the closed-circuit monitoring system at certain points of the interrogation." Id. at ¶130.

- Defendant Becker admitted that "contact was made between Vicki Becker, in her role as an Elkhart County Deputy Prosecutor, and the Police Defendants" during the underlying investigation predating Mr. Royer's interrogation. Id. at ¶131.

- Defendant Becker did not deny that "conversations took place in the Elkhart County Prosecutor's Office regarding the coercive nature of Mr. Royer's interrogations and the unreliability of the statements obtained. Though it was never disclosed, Elkhart County Prosecutor Curtis Hill had concerns about Mr. Royer's interrogation and declined to sign the charging documents against Mr. Royer." Id. at ¶154.

- Defendant Becker did not deny that Detective Conway's discipline or demotion from the homicide unit was not disclosed to Mr. Royer's defense prior to trial. Id. at ¶189-190.

C. **Defendant Becker's first answer to the factual allegations in Plaintiff's Complaint are binding judicial admissions.** *Buckley*, **2022 WL 4598577, at \*4.**

Just focusing on the allegations discussed above, Defendant Becker's second Answer deviated from the admissions made in her first Answer in significant respects:

- Defendant Becker denied that Mr. Royer was mentally disabled at the time of his arrest. Dckt. 93 at ¶8.

- Defendant Becker denied that Mr. Royer's confession was false and that ample evidence demonstrates the "falsity and unreliability of the manufactured statement." Id. at ¶10.

- Defendant Becker denied that Defendants "took no steps to accommodate Mr. Royer's disability prior to nor during the interrogation." Id. at ¶105.

- Defendant Becker denied that she "an Elkhart County deputy prosecutor, watched the interrogation through the closed-circuit monitoring system at certain points of the interrogation." Id. at ¶130.

- Defendant Becker denied that she and the other Defendants "had been in frequent contact during the investigation that predated Mr. Royer's interrogation. Defendant Becker did so in an investigative capacity." Dckt. 93 at ¶131. Whereas, in her first Answer Defendant Becker revealed that "contact was made between Vicki Becker, in her role as an Elkhart County Deputy Prosecutor, and the Police Defendants" during the underlying investigation predating Mr. Royer's interrogation. Dckt. 47 at ¶131.

- Defendant Becker denied that "conversations took place in the Elkhart County Prosecutor's Office regarding the coercive nature of Mr. Royer's interrogations and the unreliability of the statements obtained." Dckt. 93 at ¶154.

4

### D. Defendant Becker's July 18, 2023 Deposition Exposed How Her Admissions and Non-Denials in the Two Answers Would Be Used at Trial

Plaintiff strategically chose to question Defendant Becker about the critical admissions (and non-denials) during her July 18, 2023, deposition.[1]  Ex. 1, Becker Dep. Tr.

#### i. Plaintiff Questioned Defendant Becker at Her Deposition Regarding Admissions and/or Non-Denials in her First Answer

Plaintiff initially examined Defendant Becker regarding her first Answer.  Defendant Becker was confronted with her non-denial that "[t]he State's manufactured case against Mr. Royer hinged on three pieces of fabricated evidence."  Ex. 1, Becker Dep. at 304:15-305:7; Dckt. 47 (First Answer) at ¶4.  Defendant Becker testified: "As we sit here today, no, it's not true at all.  At the time when this was done in a perfunctory response to a complaint, it was an accurate answer, I'm sure, by my counsel."  Ex. 1, Becker Dep. at 304:15-305:7. A reasonable jury, however, could credit Defendant Becker's non-denial at trial and question why Defendant Becker's Answers changed during the litigation.

Defendant Becker's first Answer did not deny the allegation that among the "fabricated evidence was an involuntary false confession attributed to Mr. Royer, which was concocted, manufactured, coerced through hours of illegal interrogation.  During this interrogation, Defendants Conway – at the behest of other Defendants – used intimidation and manipulation to obtain a false and involuntary confession from Mr. Royer."  Dckt. 47 (First Answer) at ¶5; Ex. 1, Becker Dep. Tr. at 306:22-308:12.  When confronted with this non-denial, Defendant Becker had no plausible explanation:

Q: Did you deny that allegation?

---

[1] There, Defendant Becker testified that she "believe[d] that [she] did" review the first Answer to Plaintiff's Complaint before it was filed.  Id. at 283:25-284:7 (referring to Dckt. 47, 6/21/22 Answer).

5

> A: I did not deny that. My attorney answered that we're without sufficient information at the time that he filed this response, which was a short period of time after your complaint, and I'm sure he was still in investigative stages and wasn't going to commit to anything at that point, which is pretty normal in the practice of law.
>
> Q: And sitting here today, you're saying that that answer is wrong as well, correct?
>
> [Objection]
>
> A: I'm not saying that the answer is wrong. I'm saying at the time this answer was filed, which was about two and a half months afterward, that my attorney was not with sufficient information to answer one way or the other. So it's a misstatement.

Id.

A reasonable jury could credit Defendant Becker's non-denial of this allegation at trial.

As this Court recognized in denying Becker's Motion to Dismiss, a critical allegation against Defendant Becker centers on a conspiracy among her and additional Defendants to extract a confession from Plaintiff without providing him accommodations for his mental disability. Dckt. 87; *Royer v. City of Elkhart*, No. 3:22-CV-254 JD, 2022 WL 17600377, at *8 (N.D. Ind. Dec. 13, 2022). Defendant Becker's first Answer does not deny that: (1) Mr. Royer was mentally disabled (Dckt. 47 at ¶3); (2) Defendant Conway was made aware prior to the interrogation that Mr. Royer was "mentally disabled and had the mind of a child." (Dckt. 47 at ¶6); and (3) Defendant Becker, among other Defendants, took no steps to accommodate Mr. Royer's disability (Dckt. 47 at ¶8). At her deposition, Defendant Becker had no reasonable explanation for her non-denials. Ex. 1, Becker Dep. Tr. at 306:22-308:12. A reasonable jury could easily decide that Defendant Becker's non-denial of these allegations is valuable evidence at trial given that she had overseen the underlying criminal prosecution for 17 years prior to filing her initial Answer.

Also, Defendant Becker's first Answer did not deny Plaintiff's innocence. Dckt. 47 at ¶39. When confronted, Defendant Becker testified:

6

> Q: And so by June of 2022, you didn't believe that you had sufficient information to state one way or the other as to whether Mr. Royer had anything to do with this heinous crime, correct?
>
> [Objection]
>
> Q: You can answer.
>
> A: This – this isn't – that is not correct.
>
> Q: It's not true. Another answer that should be changed, ma'am?
>
> A: No, it should not be changed.

Ex. 1, Becker Dep. Tr. at 332:6-333:2

Again, a reasonable jury could decide that Defendant Becker's non-denial of Plaintiff's innocence is valuable evidence. *See Parish v. City of Elkhart*, 702 F.3d 997, 1003 (7th Cir. 2012) ("Because the district court's rulings improperly limited the introduction of evidence relating to Parish's innocence, and that evidence was critical to the damages issue, the award of damages cannot stand.")

        ii.       **Plaintiff Questioned Defendant Becker at Her Deposition Regarding Conflicting Admissions and/or Non-Denials in her Answers**

Plaintiff also questioned Defendant Becker regarding contradictory Answers. First, Plaintiff confronted Defendant Becker with her divergent Answers regarding Defendants failure to provide accommodations to Plaintiff during his interrogation. In her first Answer, Defendant Becker maintained that "Defendants are without sufficient information to admit or deny the allegation in Paragraph 8 of Plaintiff's Complaint." Dckt. 47 at ¶8. In her second Answer, Defendant Becker responded that she "denies that Plaintiff had a disability or that an accommodation was necessary." Dckt. 93 at ¶8. At the deposition, Defendant Becker leaned into her second answer (Ex. 1, Becker Dep. Tr. at 338:15-339:18) and denied that Plaintiff was disabled. Plaintiff then confronted Defendant Becker with additional objective evidence

7

demonstrating her belief that Plaintiff was disabled: her own argument to the trial court during Plaintiff's 2005 sentencing. Id. at 339:22-343:9; Ex. 2, Sentencing Tr. Defendant Becker's testimony was self-serving and non-sensical:

> Q: So in 2005, you informed the Court at the sentencing that the State of Indiana does recognize that Mr. Royer does have a mental disability, correct?
>
> A: Yes.
>
> Q: You characterized it as a very serious mental disability, correct?
>
> A: Yes.
>
> Q: But when you get sued and the allegation is that you're watching a disabled person get interrogated, you answer the complaint, "Defendant Becker denies that Plaintiff had a disability or that an accommodation was necessary," correct?
>
> [Objection]
>
> A: Again, I was trying to ask you what you mean by a disability. Those are terms of art, very clearly. I am meaning something during my sentencing argument after receiving a significant amount of information. And when I read your interrogatory [Complaint], even here today –
>
> Q: That's the complaint.
>
> A: -- there are –
>
> Q: That's the complaint.
>
> A: Oh, I apologize. This is the answer to the complaint. Again, when you are not putting things in context, it's very difficult to understand what you mean by terms. And based upon the way that you have been treating me in the time that we have been associated, I don't trust that you and I are speaking the same language. So when I ask can you please clarify what you mean, I'm not trying to be difficult. I'm trying to understand what you mean.
>
> I am not suggesting by any stretch of the imagination that the statement I made during sentencing is inconsistent with the statement in the answer. They are different contexts and different applications.
>
> Q: Which court were you misinforming, the sentencing court in 2005 when you told that court that Mr. Royer has a very serious mental disability, or the district court judge here when you informed him that plaintiff had no disability at all?

> A: I was not misinforming any court. These are two different uses of the word, and clearly you want to spin them different ways in order to make it look like I'm giving inaccurate information. So we're not speaking the same language, very clearly.

Ex. 1, Becker Dep. at 341:2-344:9.

A jury could use this evidence at trial when assessing Plaintiff's claims, damages, and Defendant Becker's credibility.

Next, Plaintiff confronted Defendant Becker with her contradictory Answers regarding communication with her co-defendants preceding Plaintiff's September 2003 interrogation. In her first answer, Defendant Becker maintained that: "Defendants admit contact was made between Vicki Becker in her role as an Elkhart County Deputy Prosecutor and the Police Officers Defendants. Defendants deny the remaining allegations in paragraph 131 of Plaintiff's Complaint." Dckt. 47 at ¶131. In her second Answer, Defendant Becker denied that she had been in frequent contact with Defendants prior to Plaintiff's interrogation. Dckt. 93 at ¶131. Again, Defendant Becker had no explanation for her divergent answers. Ex. 1, Becker Dep. Tr. at 346:25-348:8. A reasonable jury could find that there is none and that Defendant Becker only shifted her story to manufacture an absolute immunity defense.

Third, Plaintiff confronted Defendant Becker with her contradictory answers regarding her observation of Plaintiff's interrogation. In her first Answer, Defendant Becker maintained that "Defendants admit that Vicki E. Becker, then an Elkhart County deputy prosecutor, watched the interrogation through the closed-circuit monitoring system at certain points of the interrogation." Dckt. 47 at ¶130. Defendant Becker's second Answer states: "Defendant Becker denies." Dckt. 93 at ¶130. Again, Defendant Becker had no reasonable explanation for her divergent Answers. Ex. 1, Becker Dep. at 349:1-19. As before, a reasonably jury could find that there is none.

## II. ARGUMENT

### A. As a Matter of Law, Defendant Becker Cannot Amend Her Responses to the First Amended Complaint

As demonstrated, Defendant Becker made critical admissions (and non-denials) in her first Answer to Plaintiff's Complaint. Defendant Becker's statements are binding judicial admissions. As the Seventh Circuit holds:

> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." Michael H. Graham, *Federal Practice and Procedure: Evidence* § 6726 (Interim Edition); *see also* John William Strong, *McCormick on Evidence* § 254, at 142 (1992). A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party. *Id.* When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission. Michael H. Graham, *Federal Practice and Procedure* § 6726, at 536–37.

*Keller v. United States*, 58 F.3d 1194, 1199 (7th Cir. 1995).

Defendant Becker cannot simply withdraw these admissions by amending her first answer. *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005) (affirming the decision denying leave to amend first answer because "the delay and prejudice to Crest that would result if the City were permitted to amend its answer five months after its original answer and one month after discovery had closed."); *Help At Home, Inc. v. Medical Capital, L.L.C.,* 260 F.3d 748, 753 (7th Cir. 2001) ("a party is bound by what it states in its pleadings."). Accordingly, Defendant Becker's Motion should be denied.

### B. Defendant Becker's Delay in Seeking Leave to Amend is Inexcusable and Would Cause Plaintiff Undue Prejudice

Leave to amend a pleading should be denied where the party seeking leave to amend has unduly delayed in filing its motion for leave or where the amendment would result in undue prejudice to the opposing party or where the movant acts in bad faith. *Foman v. Davis*, 371 U.S.

178, 182 (1962); *Crest Hill Land Dev., LLC,*, 396 F.3d at 804. Defendant Becker has not explained why leave to amend is appropriate under *Foman*.

Defendant Becker's cursory four-page motion provides no justification for why she waited 17 months since filing her first Answer – or more than three months since her deposition – to seek leave to amend. Dckt. 174. Defendant Becker vaguely asserts that "undersigned counsel has sought to amend Defendant Becker's answer reasonably diligently upon becoming aware of information unknown to him prior to the deposition." Dckt. 174 at 3. But counsel does not explain what that this new "information" entails.

To be clear, this is not a situation where the party moving for leave to amend can justify its lengthy delay based on the existence of new information. There are no new facts.[2] Defendant Becker was involved in the underlying criminal investigation prior to Plaintiff's September 2003 interrogation. Defendant Becker was the lead prosecutor on Plaintiff's criminal case from beginning to end. She authorized the initiation of charges, was the lead prosecutor at the 2005 trial, and personally defended the conviction throughout Plaintiff's post-conviction hearing in 2019. Defendant Becker knew the record at the time she provided her first Answer to Plaintiff's Complaint and no new evidence justifies erasing those judicial admissions from the record. Nothing justifies Defendant Becker's inordinate delay in bringing her Motion to Amend.

Separate and apart from Defendant Becker's inexcusable delay, an amendment would result in undue prejudice to Plaintiff. As described above, Defendant Becker should not be granted leave to alter judicial admissions two years later just because she now appreciates how it can be used against her in cross-examination. And further, Defendant Becker's shifting responses

---

[2] Because there is no justification for the delay, Defendant Becker argues that the motion is brought to "address the concerns of Plaintiff's counsel regarding certain answer paragraphs." Dckt. 174 at 3. This argument falls flat. As the deposition transcript illustrates, Plaintiff cross-examined Defendant Becker regarding her answers to expose critical admissions, non-denials, and to expose her willingness to manipulate facts to fit her needs.

11

are relevant and admissible evidence at trial. A reasonable jury could determine that Defendant Becker is willing to tailor her testimony – just like with her admissions and denials - to whatever suits her own interests in that moment. That is precisely what Plaintiff's Complaint has alleged against Defendant Becker all along. Dckt. 1. Further, Plaintiff would suffer additional prejudice as he already spent an extensive amount of time preparing for and conducting Defendant Becker's deposition based on the answers she already has provided.

## CONCLUSION

Mr. Royer's wrongful conviction was a miscarriage of justice, in which Plaintiff's complaint sufficiently alleges that Defendants played a large part. Defendant Becker filed multiple Answers to Plaintiff's Complaint. Those Answers constitute binding judicial admissions. *Crest Hill Land Dev., LLC*, 396 F.3d at 804; *Buckley,*, 2022 WL 4598577, at *4. As a result, Defendant Becker should be subject to cross-examination based on those Answers throughout this litigation, including at trial. For the reasons stated above, Defendant Becker's motion should be denied.

RESPECTFULLY SUBMITTED,

/s/ Elliot Slosar
*One of Plaintiff's Attorneys*

Jon Loevy
Elliot Slosar
Margaret E. Campbell
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
Fax: (312) 243-5902

## CERTIFICATE OF SERVICE

      I, Elliot Slosar, certify that the foregoing motion was sent via CM/ECF to all counsel of record on November 14, 2023.

                                                /s/ Elliot Slosar
                                                *One of Plaintiff's Attorneys*