```
 1                 UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF INDIANA
 2                      SOUTH BEND DIVISION

 3

 4   ANDREW ROYER,                   )
                                     )
 5               Plaintiff,          )
                                     )
 6           -v-                     ) CASE NO.
                                     ) 3:22-cv-00254-JD-MGG
 7   CITY OF ELKHART, et al.,        )
                                     )
 8               Defendants.         )

 9

10

11          The videotaped deposition upon oral

12   examination of VICKI E. BECKER, a witness produced and

13   sworn before me, Melody M. Goodrich, CM, Notary Public

14   in and for the County of St. Joseph, State of Indiana,

15   taken on behalf of the Plaintiff at the offices of

16   Stewart Richardson & Associates, 1400 East Angela

17   Boulevard, Suite 305, South Bend, Indiana, on Tuesday,

18   July 18, 2023, at 10:03 a.m., pursuant to the Federal

19   Rules of Civil Procedure.

20

21

22

23

24            STEWART RICHARDSON & ASSOCIATES
               Registered Professional Reporters
25                      (800)869-0873
```

```
 1        of the complaint -- now if you go to
 2        Exhibit 18 -- let's just go back an exhibit.
 3             After receiving a copy of the complaint, you
 4        provided an answer to the complaint, correct?
 5   A    Through my attorney, yes.
 6   Q    Okay.  And the responses to the complaint and the
 7        answer would be true and correct to the best of
 8        your knowledge and recollection, correct?
 9   A    I'm sorry.  What?
10             MR. CARLISLE:  Objection to the form.
11   Q    The answer to plaintiff's complaint -- so you
12        answered every single paragraph of the complaint.
13             The answer to the complaint would be true
14        and correct to the best of your knowledge and
15        recollection at the time that you worked on it
16        with counsel.  Fair?
17             MR. CARLISLE:  Objection to the form.
18        Misstates the testimony.  She said it was filed
19        through counsel.
20             You may answer.
21   A    I have no reason to disbelieve that it is not
22        true and correct, but this is not something that
23        I signed.  This was presented by my counsel.
24        However, he is certainly acting on my behalf.
25   Q    This is something that you would have reviewed
```

```
 1        before it was filed.  Fair?
 2            MR. CARLISLE:  Objection to form.
 3    A   I believe that I did.
 4    Q   And fair to say that you take this lawsuit
 5        seriously?
 6            MR. CARLISLE:  Objection to form.
 7    A   I don't know what you mean by "seriously."
 8    Q   Well, is it fair to say that you would never file
 9        something in court that was not a true and
10        accurate representation?
11            MR. CARLISLE:  Objection to form.  She said
12        counsel filed this.
13    A   Now I'm completely confused.  I asked what you
14        mean by "seriously," and then you went to a
15        different topic.  Can you help me understand what
16        you're asking me?
17    Q   New question.  I'll strike the question.
18            Is it fair to say that you would never
19        authorize an agent of yours to file something in
20        court that was not true?
21            MR. CARLISLE:  Objection to form.
22    A   No, I would not knowingly do that.
23    Q   Yeah.  And you have been represented by counsel
24        for the attorney general's office throughout this
25        proceeding.  Fair?
```

```
 1        inform you that the interrogation was one of the
 2        worst interrogations he had ever witnessed?
 3             MR. KIVETZ:  Objection.  Form.
 4   A    No.
 5   Q    Prior to the 2005 trial, is it fair to say that
 6        Mr. Daggy never disclosed his observations and
 7        concerns regarding Mr. Royer's interrogation to
 8        you?
 9             MR. KIVETZ:  Objection.  Form.
10   A    That presumes that he had observations and
11        concerns about it, and so I can't comment on
12        that.  But he never disclosed anything to me in
13        any way that he had concerns about it.
14   Q    If you can focus on Exhibit 18, Ms. Becker.
15             Do you see your response to number 4 --
16        question 4?  It should be the second page of this
17        document, where it says -- the question is -- or
18        the allegation is, "The State's manufactured case
19        against Mr. Royer hinged on three pieces of
20        fabricated evidence."  Do you see that
21        allegation, ma'am?
22   A    I see the allegation.
23   Q    And do you see your answer, "Defendants are
24        without sufficient information to admit or deny
25        the allegations in paragraph 4 of the complaint"?
```

```
 1        Do you see that?
 2   A    I see the answer.
 3   Q    Is that true?
 4   A    As we sit here today, no, it's not true at all.
 5        At the time when this was done in a perfunctory
 6        response to a complaint, it was an accurate
 7        answer, I'm sure, by my counsel.
 8   Q    What are you saying, sitting here today, that
 9        this is not a true answer?
10            MR. CARLISLE:  Objection.  That misstates
11        her testimony.
12   A    Are you asking me to give up all of the
13        information in evidence that I believed existed
14        against Royer and Canen and discuss that with you
15        during this deposition?  Because we're going to
16        be here a long time if that's what you're really
17        asking me.
18   Q    If that is the case, that you have so much
19        evidence against Ms. Canen and Mr. Royer, why
20        haven't you ever re-charged them?
21            MR. KIVETZ:  Objection.  Form.
22            MR. WILL:  Objection as form.
23   A    Because of the circumstances that occurred during
24        the post-conviction proceedings and the opinions
25        of the Indiana Court of Appeals and of the trial
```

```
 1        court and because of the disciplinary action that
 2        was taken against Mr. Conway subsequent to all of
 3        this happening and because it has not been
 4        reopened for further investigation to see if
 5        there's independent evidence.
 6     Q  You had -- it has been 11 years since Ms. Canen's
 7        conviction was reversed and the case was
 8        dismissed.  Fair?
 9     A  I'm sure that that is an accurate statement.
10     Q  And it's your testimony that you didn't learn
11        that Detective Conway had credibility issues
12        until approximately 2021, around the time of the
13        Royer appellate opinion, correct?
14     A  Detective Conway did not have credibility issues
15        until that time, to my knowledge, correct.
16     Q  And so what's your explanation for why you didn't
17        retry Ms. Canen between 2012 and 2021?
18     A  Because I felt that the issue with the
19        misidentified fingerprint was very concerning and
20        problematic, and I did not want to go down that
21        road again.
22     Q  In response to paragraph 5, do you see where it
23        says, "Included among that fabricated evidence
24        was an involuntary false confession attributed to
25        Mr. Royer, which was concocted, manufactured,
```

```
 1        coerced through hours of illegal interrogation.
 2        During this interrogation, Defendants Conway - at
 3        the behest of other Defendants - used
 4        intimidation and manipulation to obtain a false
 5        and involuntary confession from Mr. Royer."  Do
 6        you see that, ma'am?
 7   A    I do.
 8   Q    Did you deny that allegation?
 9   A    I did not deny that.  My attorney answered that
10        we're without sufficient information at the time
11        that he filed this response, which was a short
12        period of time after your complaint, and I'm sure
13        he was still in investigative stages and wasn't
14        going to commit to anything at that point, which
15        is pretty normal in the practice of law.
16   Q    And sitting here today, you're saying that that
17        answer is wrong as well, correct?
18             MR. CARLISLE:  Objection.  Misstates her
19        testimony.
20   A    I'm not saying that the answer is wrong.  I'm
21        saying at the time that this answer was filed,
22        which was about two and a half months afterward,
23        that my attorney was not with sufficient
24        information to answer one way or the other.  So
25        it's a misstatement.
```

```
 1   Q   All right.  Let's go to paragraph 8.  Do you see

 2       where it says, "Still, no Defendants took any

 3       steps to accommodate Mr. Royer's disability"?  Do

 4       you see that, ma'am?

 5   A   I see that.

 6   Q   Did you deny that allegation?

 7   A   It says that we're without sufficient information

 8       to admit or deny the allegations in paragraph 8

 9       of plaintiff's complaint, which is a pretty

10       normal response in interrogatories done within

11       two, three months after the complaint was filed

12       because it's still under investigation.

13   Q   Well, your attorneys in 2022 would have surely

14       been on notice that you were an actual observer

15       to the interrogation in September of 2003,

16       correct?

17           MR. CARLISLE:  Objection.  You're asking her

18       to speculate.

19   Q   Ms. --

20           MR. CARLISLE:  You don't need to reveal

21       privileged communications either.

22           MR. SLOSAR:  That's actually a fair

23       objection, Alex.

24           THE WITNESS:  Okay.

25           MR. SLOSAR:  I can see that.  Let me frame
```

1     put, Royer did not receive a fair criminal

2     trial.'" Is that correct?

3   A   I do see that.

4   Q   You admitted that allegation, correct?

5   A   Yes.

6   Q   On paragraph 39 -- so this is -- the allegation

7     is "Mr. Royer had absolutely nothing to do with

8     this heinous crime."

9        Your answer was that "Defendants are without

10    sufficient information to admit or deny the

11    allegation in paragraph 39 of Plaintiff's

12    Complaint."  Is that correct?

13  A   I see the question and answer -- or the

14    interrogatory and the answer, yes.

15  Q   And this answer was filed June of 2022, correct?

16  A   Yes.

17  Q   And so by June of 2022, you didn't believe that

18    you had sufficient information to state one way

19    or the other as to whether Mr. Royer had anything

20    to do with this heinous crime, correct?

21       MR. CARLISLE:  Objection.  Misstates the

22    testimony.

23  Q   You can answer.

24  A   This -- this isn't -- that is not correct.

25  Q   It's not true.  Another answer that should be

1 | changed, ma'am?

2 | A | No, it should not be changed.

3 | MR. CARLISLE:  Objection.  Argumentative.

4 | Harassing.

5 | A | At the time that this was answered, my attorney

6 | clearly had not done sufficient investigation to

7 | do anything other than indicate defendants are

8 | without sufficient information to admit or deny

9 | the allegations.

10 | That is not something that would be anything

11 | other than what any lawyer would do two and a

12 | half months into the investigation.

13 | Q | And you were in contact with your attorney at the

14 | time this was filed, correct?

15 | MR. CARLISLE:  Objection to form.  You may

16 | answer as long as you don't disclose privileged

17 | communications.

18 | THE WITNESS:  Okay.

19 | Q | I didn't ask for the content of a communication.

20 | What I asked is:  You were in contact with your

21 | attorney at the time the answer was filed on your

22 | behalf, correct?

23 | A | I don't know.  I would presume so, but I do not

24 | know.  I'm presuming so.

25 | Q | Certainly you would not want false documents to

```
 1        information to the court when defending a
 2        lawsuit, would you?
 3   A    Not knowingly.
 4   Q    And the information provided in any answer on
 5        your behalf would have been true and accurate to
 6        the best of your knowledge and recollection.
 7        Fair?
 8   A    That's really not a fair statement because an
 9        answer, again, is a preliminary pleading, and it
10        is done before the discovery process begins.  So
11        when you're asking questions about discovery, the
12        answer is not part of the discovery process based
13        upon my understanding.  It is the preliminary
14        answer to the complaint and then the discovery
15        process begins.
16            During the discovery process is when the
17        attorney becomes informed about the facts and
18        circumstances upon which they base their
19        representation.
20        (Becker Exhibit 20 marked.)
21   Q    Ms. Becker, can you turn to Exhibit Number 20,
22        please.  Fair to say that you weren't aware that
23        you actually filed two answers to the complaint
24        in this case before today?
25            MR. CARLISLE:  Objection to the form.
```

```
 1   A   I would not say that that's true.

 2   Q   Oh, you knew before coming in here that you filed

 3       two answers to the complaint?

 4   A   I can't say that that is true.  I knew that I was

 5       sued in my professional capacity as well as my

 6       personal capacity.  So I would presume that there

 7       were two answers because it's technically two

 8       different defendants.

 9   Q   Still, you are the same person who is the

10       defendant, correct?

11   A   No.  There are two defendants:  Me as my

12       professional capacity, me as my personal

13       capacity.

14            So I'm kind of confused about what you're

15       asking me because in my professional capacity,

16       the office of the prosecuting attorney, I don't

17       believe is any longer a -- a defendant.  But me

18       in my personal capacity, I am.  Maybe I'm

19       mistaken.

20            MR. CARLISLE:  Can I ask a preliminary

21       question --

22   Q   I think -- I think --

23            MR. CARLISLE:  -- for an objection?

24   Q   -- you are misunderstanding.

25            MR. SLOSAR:  What's the preliminary
```

```
 1        accommodation was necessary."  Is that correct?
 2   A    Yes.
 3   Q    And that's -- that's a truthful and accurate
 4        statement that you've filed here with the court,
 5        right?
 6             MR. CARLISLE:  Objection.  I think this is a
 7        nuance of the term "accommodation," so you're
 8        getting into legal conclusions here.  Objection
 9        to form.
10             You can answer.
11             THE WITNESS:  Thank you.
12   A    That is my answer to this interrogatory.
13   Q    And is it true?
14   A    Yes.
15   Q    It's your testimony that Mr. Royer -- or sorry.
16             It's your testimony that Mr. Royer did not
17        have a disability, correct?
18   A    The way that this question is asked, disability
19        is being interpreted by me to be a -- a -- a
20        diagnoses that hits a certain level, I suppose;
21        for example, the person is officially blind, is
22        officially deaf, is a certain type of disability.
23             So with the way that this question is
24        phrased, it is an accurate answer.
25   Q    Ms. Becker, isn't it true that Mr. Royer has a
```

```
 1        very serious mental disability?
 2             MR. CARLISLE:  Objection to form.
 3             MR. KIVETZ:  Objection.  Form.
 4    A   You're going to have to specify what you mean as
 5        a very serious mental deficiency.
 6    Q   I didn't say "deficiency."
 7    A   I'm sorry.
 8    Q   I said "disability."
 9    A   Disability.
10    Q   Yep.
11    A   You're going to have to define what you mean by
12        that.
13    Q   Ms. Becker, in this answer, you actually said,
14        "Defendant Becker denies that Plaintiff had a
15        disability or that an accommodation was
16        necessary."  That was your answer to allegation
17        105, correct?
18    A   That is my answer to 105, yes.
19    Q   Okay.
20    A   And I'm still trying to understand what you mean
21        by a very serious mental disability.
22    Q   You know what?  I'm not going to answer your
23        question because I'm the attorney asking
24        questions here today, Ms. Becker.
25             But what I am going to do is refer you to
```

```
 1        Exhibit 77.  We're going to hand that to counsel,
 2        and I'll provide this to you once your counsel
 3        has a copy of this.
 4        (Becker Exhibit 77 marked.)
 5   Q    Do you recognize this document, Ms. Becker?
 6   A    It's a one-page document that appears to be a
 7        cover page of the reporter's transcript of
 8        proceedings.  So it's just one --
 9   Q    Why don't you turn to the next page.
10   A    -- oh, I'm sorry -- two pages.
11   Q    And looking at the next page, do you recognize
12        that, Ms. Becker?
13   A    Yes.
14   Q    That's you at Mr. Royer's sentencing proceeding,
15        correct?
16   A    It is.
17   Q    And you informed the Court at Mr. Royer's
18        sentencing proceeding, "As for mental disability,
19        the State of Indiana does recognize that
20        Mr. Royer does have a mental disability, a very
21        serious mental disability; however, we believe
22        that [it] is mitigated slightly by the fact that
23        he chose from time to time not to take his
24        medication."  Is that what you informed the
25        Court?
```

```
 1   A   Yes.
 2   Q   So in 2005, you informed the Court at the
 3       sentencing that the State of Indiana does
 4       recognize that Mr. Royer does have a mental
 5       disability, correct?
 6   A   Yes.
 7   Q   You characterized it as a very serious mental
 8       disability, correct?
 9   A   Yes.
10   Q   But when you get sued and the allegation is that
11       you're watching a disabled person get
12       interrogated, you answer the complaint,
13       "Defendant Becker denies that Plaintiff had a
14       disability or that an accommodation was
15       necessary," correct?
16           MR. CARLISLE:  Objection to form.  Misstates
17       evidence.  Argumentative.
18           You can answer.
19           THE WITNESS:  Thank you.
20   A   Again, I was trying to ask you what you mean by a
21       disability.  Those are terms of art, very
22       clearly.
23           I am meaning something during my sentencing
24       argument after receiving a significant amount of
25       information.  And when I read your interrogatory,
```

```
 1        even here today --
 2   Q    That's the complaint.
 3   A    -- there are --
 4   Q    That's the complaint.
 5   A    Oh, I apologize.  This is the answer to the
 6        complaint.
 7             Again, when you are not putting things in
 8        context, it's very difficult to understand what
 9        you mean by terms.  And based upon the way that
10        you have been treating me in the time that we
11        have been associated, I don't trust that you and
12        I are speaking the same language.  So when I ask
13        can you please clarify what you mean, I'm not
14        trying to be difficult.  I'm trying to understand
15        what you mean.
16             I am not suggesting by any stretch of the
17        imagination that the statement I made during
18        sentencing is inconsistent with the statement in
19        the answer.  They are different contexts and
20        different applications.
21   Q    Which court were you misinforming, the sentencing
22        court in 2005 when you told that court that
23        Mr. Royer has a very serious mental disability,
24        or the district court judge here when you
25        informed him that plaintiff had no disability at
```

```
 1      all?
 2           MR. CARLISLE:  Objection.  Argumentative.
 3   Q  You can answer.
 4   A  I was not misinforming any court.  These are two
 5      different uses of the word, and clearly you want
 6      to spin them different ways in order to make it
 7      look like I'm giving inaccurate information.  So
 8      we're not speaking the same language, very
 9      clearly.
10   Q  Ms. Becker, go to 115, please, of Exhibit 18, the
11      answer.  In that allegation, do you see where it
12      says, "During the interrogation, Defendants
13      observed that Mr. Royer had great trouble
14      understanding and comprehending what was taking
15      place."  Do you see that?
16   A  I see that.
17   Q  And did you deny that?
18   A  I did.
19   Q  You did not say that you lack sufficient
20      information to form a belief as to the truth of
21      material allegations in the paragraph.  You
22      flatly denied it.  Correct?
23   A  Well, my attorney flatly denied it, yes, and that
24      was based upon conversation that we had.  And he
25      believed that it was appropriate to give this
```

```
 1         answer, which I don't disagree with.
 2    Q    And you would have agreed with that answer even
 3         knowing what Detective Conway put in his
 4         investigative report regarding Mr. Royer's
 5         well-being, correct?
 6              MR. CARLISLE:  Objection to form.
 7    A    I don't under- -- I don't understand what you're
 8         asking me about what Mr. Conway put in his
 9         report.
10    Q    I'm going to ask for you to turn to Exhibit 31.
11              MR. KIVETZ:  Do we have 31?
12              MS. EK:  I think we already have it.  Let me
13         check.
14              MR. KIVETZ:  What is it?
15              MR. SLOSAR:  Yeah, I think 31 is the one
16         that had Porter at the top.
17              MS. EK:  Yeah, you guys should have 31.
18              MR. KIVETZ:  Just give me one second.  It's
19         a pretty large pile here.
20              MR. SLOSAR:  And -- sorry, Jeff.
21    Q    When you look for this, I'm referring to -- has a
22         190 in the bottom right.  It's actually the third
23         total page of this exhibit.
24    A    Just a minute then.
25    Q    At the bottom.
```

```
 1        that the answer was filed, as I'm sure that he
 2        was continuing to do investigation.
 3    Q   You would acknowledge that that answer to that
 4        specific allegation conflicts with what
 5        Detective Conway wrote in his own investigative
 6        report.  Fair?
 7            MR. CARLISLE:  Objection to form.
 8            MR. KIVETZ:  Objection.  Form.
 9            MR. CARLISLE:  Misstates evidence.
10    A   I would not agree with that.
11    Q   You think it's consistent, right, Ms. Becker?
12    A   I would not agree with that.
13    Q   You're not going to agree with anything I ask
14        you?
15            MR. WILL:  Objection as to form.
16    Q   I asked you whether --
17    A   Mr. --
18    Q   -- it conflicted or whether it was consistent.
19            MR. CARLISLE:  Argumentative.
20    Q   I just -- and you're saying you don't agree with
21        either; is that right?
22    A   Are you ready for me to answer?
23    Q   You know what?  I'm going to strike the question.
24        You're right.  This is a waste.
25            Why don't we look at paragraph 131 of
```

```
 1        Exhibit 20.  Are you there?
 2   A    I am.
 3   Q    All right.  So this allegation alleges "Defendant
 4        Becker and the Police Officer Defendants had been
 5        in frequent contact during the investigation that
 6        predated Mr. Royer's interrogation.
 7        Defendant Becker did so in an investigative
 8        capacity."  Is that right?
 9   A    That's what it asks.
10   Q    You deny this allegation, correct?
11   A    I did.
12   Q    Now why don't you go -- actually, I'm going to
13        show you my Exhibit 18.  I'm going to go to 131.
14        You keep 131 open on yours.  I'm going to give
15        you my binder.
16            And in 131 of your first answer, did you
17        state "Defendants admit contact was made between
18        Vicki Becker in her role as an Elkhart County
19        Deputy Prosecutor and the Police Officer
20        Defendants"?
21   A    That's not the whole answer.  So the whole answer
22        is my answer.  "Defendants deny the remaining
23        allegations in paragraph 131 of Plaintiff's
24        Complaint."
25   Q    You stated that, correct?
```

```
 1    A    My attorneys stated that.

 2    Q    You did not state you denied it, right?

 3    A    No.  My attorneys stated "Defendants admit

 4         contact was made between Vicki Becker in her role

 5         as an Elkhart County Deputy Prosecutor and the

 6         Police Officer Defendants.  Defendants deny the

 7         remaining allegations in paragraph 131 of

 8         Plaintiff's Complaint."

 9    Q    You know what?  Let's go to paragraph 130, then,

10         of both.  In your second answer, isn't it true

11         that you denied that -- that "Defendant Vicki E.

12         Becker, then an Elkhart County deputy prosecutor,

13         joined Defendants Daggy, Snider, and Converse in

14         watching the interrogation through the

15         closed-circuit monitoring system"?

16    A    Yes.  My attorney filed the answer to 130,

17         "Defendant Becker denies," but yet in 130, which

18         was filed about six months prior, it was a

19         partial admission.

20    Q    And the partial admission was that you --

21         "Defendants admit that Vicki E. Becker, then an

22         Elkhart County deputy prosecutor, watched the

23         interrogation through the closed-circuit

24         monitoring system at certain points of the

25         interrogation."  That was the admission, correct?
```

```
 1   A   Yes, which is distinctly different than what was
 2       asked in the "joined" part in the question, and
 3       that seems to be probably what the difference is,
 4       is one lawyer wanted to deny that and the other
 5       thought that it was appropriate to partially
 6       answer.
 7           So I honestly can't answer why my lawyers
 8       chose two different paths, but they're both
 9       consistent to the extent that I didn't join
10       anybody.  I was doing what I needed to do for my
11       evaluation process.
12   Q   You participated -- well, let me strike that.
13           You were present for certain parts of the
14       interrogation of Mr. Royer on September 3rd,
15       2003, and September 4th, 2003, correct, ma'am?
16   A   I was present for certain parts of the interview
17       portion and the interrogation portion of the
18       interview with Mr. Royer on the 3rd and the 4th,
19       to the best of my knowledge.
20   Q   The first time you reviewed -- or publicly
21       divulged that information was during a media
22       interview with Richard Bodee, correct?
23           MR. CARLISLE:  Objection to form.
24   A   Publicly?  What do you -- do you mean, like --
25       what do you mean by "publicly"?
```