UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANDREW ROYER,

      Plaintiff

v.

DENNIS CHAPMAN, VICKI E.
BECKER, in their individual capacities,
and ELKHART COUNTY SHERIFF'S
DEPARTMENT,

      Defendants

Case No. 3:22-cv-254-CCB-MGG

DEFENDANT ELKHART COUNTY SHERIFF'S DEPARTMENT'S
BRIEF SUPPORTING ITS PARTIAL MOTION TO DISMISS
WITH RESPECT TO THE FEDERAL CLAIMS OF PLAINTIFF ANDREW
ROYER'S AMENDED COMPLAINT (DE 202)

# Table of Contents

Table of Authorities ..........................................................................................iii

1.  Introduction ........................................................................................... 1

2.  Procedural posture relevant to Sheriff's Department's Partial Motion
    to Dismiss ............................................................................................... 1

    2.1.  Complaint (Doc. 1) ......................................................................... 1

    2.2.  Elkhart County's Motion for Judgment on the Pleadings (Docs.
          88 and 89) .................................................................................... 3

    2.3.  Royer's Motion to Amend Complaint (Doc. 100) and Proposed
          Amended Complaint (Doc. 100-1) ............................................... 3

    2.4.  Opinion and Order granting Elkhart County's Motion for
          Judgment on the Pleadings (Doc. 127) ...................................... 4

    2.5.  Royer's Second Motion for Leave to Amend Complaint to Add
          *Monell* Claim Against the Sheriff's Department (Doc. 173) ................... 4

    2.6.  Stipulation to Dismiss Elkhart City Defendants (Doc. 181) ................. 4

    2.7.  Court order pertaining to Stipulation to Dismiss (Doc. 182) ................ 5

    2.8.  Royer's Motion to Delete the City of Elkhart and individual City
          of Elkhart defendants from Complaint (Doc. 183) ................................. 5

    2.9.  Court order pertaining to Royer's Motion to Delete (Doc. 184) ............. 5

    2.10. Amended Complaint (Doc. 186) ................................................... 5

    2.11. Court order pertaining to Royer's motions to amend complaint
          (Doc. 198) ...................................................................................... 5

    2.12. Royer's Amended Complaint (Doc. 202) ..................................... 5

3.  Royer's allegations and counts in Amended Complaint (Doc. 202)................... 6

4.  Statement of Issue ............................................................................... 9

5.  Standard of Review ............................................................................... 9

6.  The Amended Complaint does not state a § 1983 *Monell* claim against
    the Sheriff's Department ...................................................................... 10

6.1.    The Amended Complaint does not state a claim against the Sheriff's Department for *Monell* liability based on express policy or caused by a person with final policymaking authority .................. 11

6.2.    The Amended Complaint does not state a claim against the Sheriff's Department for *Monell* liability based on widespread custom or practice ................................................................ 13

6.3.    The Amended Complaint does not state a claim against the Sheriff's Department for *Monell* liability based on failure to train ................................................................................. 16

7.    Conclusion ................................................................ 22

## Table of Authorities

### Case law

*Abbott v. Vill. of Winthrop Harbor,*
    205 F.3d 976 (7th Cir. 2000) ............................................. 10

*Adams v. City of Indianapolis,*
    742 F.3d 720 (7th Cir. 2014) ............................................. 10

*Alexander v. City of S. Bend,*
    320 F. Supp. 2d 761 (N.D. Ind. 2004) ............................. 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................... 9, 15, 22

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,*
    520 U.S. 397 (1997) ........................................ 14, 19, 21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................... 9, 10, 15

*Buie v. McAdory,*
    341 F.3d 623 (7th Cir. 2003) ............................................. 18

*Calhoun v. Ramsey,*
    408 F.3d 375 (7th Cir. 2005) ............................................. 15

*Canen v. Chapman,*
    847 F.3d 407 (7th Cir. 2017) ............................................. 20

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989) ................................................................ 16, 21

*City of Oklahoma City v. Tuttle,*
    471 U.S. 808 (1985) ................................................................ 15, 17

*Connick v. Thompson,*
    563 U.S. 51 (2011) .................................................................. 16, 19

*Cornfield by Lewis v. Consol. High Sch. Dist. No. 230,*
    991 F.2d 1316 (7th Cir. 1993) ........................................ 15, 16, 17

*Delk v. Bd. of Comm'rs of Delaware Cnty.,*
    503 N.E.2d 436 (Ind. Ct. App. 1987) ........................................ 12

*Escobedo v. Buncich,*
    No. 2:18 CV 226, 2019 WL 2174234 (N.D. Ind. May 20, 2019) ............... 12, 19

*Est. of Sims ex rel. Sims v. Cnty. of Bureau,*
    506 F.3d 509 (7th Cir. 2007) ..................................................... 21

*Eversole v. Steele,*
    59 F.3d 710 (7th Cir. 1995) ....................................................... 12

*First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago,*
    988 F.3d 978 (7th Cir. 2021) ..................................................... 10

*Flores v. City of S. Bend,*
    997 F.3d 725 (7th Cir. 2021) ..................................................... 19

*Gable v. City of Chicago,*
    296 F.3d 531 (7th Cir. 2002) ........................................ 13, 14, 15

*Glisson v. Indiana Dep't of Corr.,*
    849 F.3d 372 (7th Cir. 2017) ..................................................... 17

*Harris v. City of Marion, Ind.,*
    79 F.3d 56 (7th Cir. 1996) ......................................................... 13

*Jett v. Dallas Indep. Sch. Dist.,*
    491 U.S. 701 (1989) ................................................................... 12

*J.K.J. v. Polk Cnty.*,
    960 F.3d 367 (7th Cir. 2020) .............................................................. 16, 19, 21

*Jones v. City of Chicago*,
    787 F.2d 200 (7th Cir. 1986) .......................................................... 17

*Jordan v. City of Chicago*,
    No. 20-CV-4012, 2021 WL 1962385 (N.D. Ill. May 17, 2021) ......................... 21

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) .......................................................... 9, 11, 15

*Monell v. Dep't of Soc. Servs. of City of New York*,
    436 U.S. 658 (1978) .................................................................... 10, 15

*Palmer v. Marion Cnty.*,
    327 F.3d 588 (7th Cir. 2003) .......................................................... 14

*Patrick v. City of Chicago*,
    974 F.3d 824 (7th Cir. 2020) .......................................................... 18

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) .................................................................... 12

*Powe v. City of Chicago*,
    664 F.2d 639 (7th Cir. 1981) .......................................................... 17

*Roach v. City of Evansville*,
    111 F.3d 544 (7th Cir. 1997) .......................................................... 13

*Rossi v. City of Chicago*,
    790 F.3d 729 (7th Cir. 2015) .......................................................... 14

*Sampson v. Lambert*,
    903 F.3d 798 (8th Cir. 2018) .......................................................... 18

*Sims v. Mulcahy*,
    902 F.2d 524 (7th Cir. 1990) .......................................................... 14

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) .......................................................... 11

*Tate v. Showboat Marina Casino P'ship*,
    431 F.3d 580 (7th Cir. 2005) .......................................................... 20

*Thomas v. Cook Cnty. Sheriff's Dep't,*
    604 F.3d 293 (7th Cir. 2010) ....................................................................... 13, 15

*Trout v. Buie,*
    653 N.E.2d 1002 (Ind. Ct. App. 1995) ............................................................. 12

*Walker v. City of Chicago,*
    596 F. Supp. 3d 1064 (N.D. Ill. 2022) ............................................................. 15

*Wragg v. Vill. of Thornton,*
    604 F.3d 464 (7th Cir. 2010) ........................................................................... 13

**Statutes**

Ind. Code §§ 36-2-13-1 to 36-2-13-14.................................................................. 12

42 U.S.C. § 1983............................................................................................................ 1

### 1.    Introduction

This is an action brought pursuant to 42 U.S.C. § 1983 and Indiana state law. The plaintiff, Andrew Royer, alleges that he was wrongfully convicted of murder due to the actions of employees of the Elkhart City Police Department, the Elkhart County Prosecutor, and an employee of the Elkhart County Sheriff's Department ("Sheriff's Department"). This Partial Motion to Dismiss seeks dismissal of Royer's federal claims against the Sheriff's Department.

### 2.    Procedural posture relevant to Sheriff's Department's Partial Motion to Dismiss

#### 2.1.    Complaint (Doc. 1)

On March 30, 2022, Royer filed his Complaint. (Doc. 1). Royer named as defendants the following: State of Indiana; City of Elkhart; Elkhart County; Elkhart County Prosecutor's Office; Dennis Chapman; Vicki Becker; Brett Coppins; Joel Bourdon; Todd Thayer; Michael Sigsbee; Peggy Snider; Paul Converse; Mark Daggy; and Carlton Conway. Conway, Daggy, Converse, Snider, Sigsbee, Thayer, Bourdon, and Coppins were employees of the City of Elkhart, Indiana Police Department ("EPD"). (Doc. 1 ¶ 29). Becker is the prosecutor of Elkhart County, Indiana. (Doc. 1 ¶ 32). Chapman was a deputy in the Sheriff's Department. (Doc. 1 ¶ 31).

The factual allegations in the Complaint have been recounted by the Court in substantial detail in Doc. 87, pp. 1–10; therefore, the Sheriff's Department will not again repeat the factual allegations in detail. In summary, Royer alleges three pieces of fabricated evidence led to his wrongful conviction: (1) his confession, which Royer claims was coerced through hours of interrogation at an EPD facility

1

involving EPD officers and Becker; (2) a witness statement which Royer claims was obtained by Conway through coercion and undisclosed incentives; and (3) Chapman's latent fingerprint analysis tying Royer's criminal co-defendant, Lana Canen, to the crime scene. (Doc. 1 ¶¶ 4, 5, 11, 12, 111, 126, 139).

The Complaint asserted the following claims:

- Count I—42 U.S.C. § 1983 Due Process (against EPD defendants and Chapman).

- Count II—Coercive Interrogation: Fifth and Fourteenth Amendments (against Conway, Daggy, Converse, Snider, and Becker).

- Count III—42 U.S.C. § 1983 Deprivation of Liberty Without Probable Cause Fourth and Fourteen Amendments (against EPD defendants and Chapman).

- Count IV—42 U.S.C. § 1983 Supervisory Liability (against Converse).

- Count V—42 U.S.C. § 1983 Failure to Intervene (against all defendants).

- Count VI—42 U.S.C. § 1983 Conspiracy to Deprive Constitutional Rights (against all defendants).

- Count VII—42 U.S.C. § 1983 *Monell* Claim (against City of Elkhart).

- Count VIII—Americans with Disabilities Act (against the City of Elkhart, the Elkhart County Prosecutor's Office, Elkhart County, and the State of Indiana).

- Count IX—Rehabilitation Act of 1973 (against the City of Elkhart, the Elkhart County Prosecutor's Office, Elkhart County, and the State of Indiana).

- Count X—Negligent Supervision under Indiana state law (against Converse).

- Count XI—Breach of Duty in Hiring, Training and Supervising – Negligence under Indiana state law (against the City of Elkhart).

- Count XII—Breach of Duty in Hiring, Training and Supervising – Negligence under Indiana state law (against Elkhart County).

- Count XIII—Breach of Duty in Hiring – Willful and Wanton Conduct under Indiana state law (against the City of Elkhart).

- Count XIV—Breach of Duty in Hiring – Willful and Wanton Conduct under Indiana state law (against Elkhart County).

- Count XV—Respondeat Superior (against the City of Elkhart and Elkhart County).

- Count XVI—Intentional Infliction of Emotional Distress (against all Defendants).

### 2.2.   Elkhart County's Motion for Judgment on the Pleadings (Docs. 88 and 89)

On December 16, 2022, Elkhart County filed a motion for judgment on the pleadings (Doc. 88) and supporting memorandum (Doc. 89). The basis of the motion was that, as a matter of Indiana state law, Elkhart County cannot be held liable for the tortious conduct of Sheriff's deputy Chapman.

### 2.3.   Royer's Motion to Amend Complaint (Doc. 100) and Proposed Amended Complaint (Doc. 100-1)

On January 6, 2023, Royer filed a motion to amend his complaint (Doc. 100) and proposed amended complaint (Doc. 100-1). The proposed amended complaint is the same as the Complaint except that: the Elkhart County Sheriff's Office is added as a defendant in the caption; the Elkhart County Sheriff's Office is added as the employer of Chapman (Doc. 100-1 ¶ 31); the Elkhart County Sheriff's Office is added as a party responsible for Chapman's torts under the doctrine of respondeat superior (Doc. 100-1 ¶ 33); and the Elkhart County Sheriff's Office is added to Counts XII and XIV as a party liable for breach of duty in hiring (Doc. 100-1 ¶¶ 348–51, 356–59).

### 2.4. Opinion and Order granting Elkhart County's Motion for Judgment on the Pleadings (Doc. 127)

On April 21, 2023, the Court granted Elkhart County's Motion for Judgment on the Pleadings and dismissed all claims against Elkhart County. (Doc. 127).

### 2.5. Royer's Second Motion for Leave to Amend Complaint to Add *Monell* Claim Against the Sheriff's Department (Doc. 173)

On October 13, 2023, Royer filed a second motion for leave to amend his complaint (Doc. 173) and proposed amended complaint (Doc. 173-1). In the proposed amended complaint, Elkhart County remains as a defendant in the caption but is deleted from the introductory paragraph. Elkhart County is deleted in paragraphs 31 and 33 as Chapman's employer. (Doc. 173-1 ¶¶ 31, 33). Royer added allegations against the Sheriff's Department alleging a failure to train and supervise Chapman. (Doc. 173-1 ¶¶ 264–74). Royer added the Sheriff's Department to Count VII—the *Monell* claim. (Doc. 173-1 ¶¶ 324–30). In Count XIV—Breach of Duty in Hiring (Doc. 173-1 ¶¶ 369–72), the Elkhart County Sheriff's Office is removed from paragraph 372. And in Count XV—"Respondeat Superior" (Doc. 173-1 ¶¶ 373–75), Elkhart County Sheriff's Office is deleted from the final sentence in paragraph 375.

### 2.6. Stipulation to Dismiss Elkhart City Defendants (Doc. 181)

On December 12, 2023, a stipulation to dismiss was filed seeking dismissal of the City of Elkhart and individual defendants Conway, Daggy, Converse, Snider, Sigsbee, Thayer, Bourdon, and Coppins. (Doc. 181).

### 2.7.    Court order pertaining to Stipulation to Dismiss (Doc. 182)

Per order dated February 1, 2024, the Court granted Royer leave to amend his Complaint for the limited purpose of revising it to reflect the dismissal of Elkhart City and the individual Elkhart City defendants. (Doc. 182).

### 2.8.    Royer's Motion to Delete the City of Elkhart and individual City of Elkhart defendants from Complaint (Doc. 183)

On February 14, 2024, Royer filed a motion to delete the City of Elkhart and individual City of Elkhart defendants from the Complaint. (Doc. 183).

### 2.9.    Court order pertaining to Royer's Motion to Delete (Doc. 184)

Per order dated February 15, 2024, Royer's motion to delete was denied and Royer was ordered to file an amended complaint to reflect the dismissal of the City of Elkhart and the individual City of Elkhart defendants. (Doc. 184).

### 2.10.  Amended Complaint (Doc. 186)

On February 22, 2024, Royer filed an amended complaint. The amended complaint is essentially the same as the Complaint (Doc. 1) except that Elkhart City and the individual Elkhart City defendants are deleted from the caption and in the body of the amended complaint the word "dismissed" is inserted when referring to the dismissed defendants. (Doc. 186).

### 2.11.  Court order pertaining to Royer's motions to amend complaint (Doc. 198)

Per court order dated March 14, 2024, Royer was granted leave to amend his complaint. (Doc. 198).

### 2.12.  Royer's Amended Complaint (Doc. 202)

On March 20, 2024, Royer filed his Amended Complaint. (Doc. 202).

3.    **Royer's allegations and counts in Amended Complaint (Doc. 202)**

In the Amended Complaint, defendants are Chapman, Becker, and the Sheriff's Department. Elkhart City and individual Elkhart City police officers are referenced in the Amended Complaint as "dismissed defendants."

Royer alleges that he was wrongfully convicted of murder based on three pieces of fabricated evidence. (Doc. 202 ¶ 4). The fabricated evidence consisted of: (1) Royer's involuntary confession (Doc. 202 ¶¶ 5–10); (2) a fabricated witness statement (Doc. 202 ¶ 11); and (3) a fabricated fingerprint analysis (Doc. 202 ¶¶ 12–13). Chapman conducted the fingerprint analysis but was not involved in either Royer's confession or the witness statement.

As to Chapman, the Amended Complaint alleges the following. Chapman was a deputy in the Sheriff's Department. (Doc. 202 ¶ 12). Elkhart City police officers recovered fingerprints from the murder scene and provided those to Chapman for analysis. (Doc. 202 ¶¶ 160–61). Chapman conducted a comparison of crime scene fingerprints to known prints of Royer and Canen and excluded both. (Doc. 202 ¶¶ 163–65). Chapman was pressured by Elkhart City Police to fabricate a false opinion to implicate Royer or Canen (Doc. 202 ¶¶ 166–68). Chapman fabricated a report that a crime scene print was that of Canen. (Doc. 202 ¶ 169). Chapman also fabricated that the crime scene fingerprint did not match any other fingerprint cards he had been provided. But a later analysis conducted by the Indiana State Police determined the latent print identified by Chapman as Canen's was that of a home health care worker (Doc. 202 ¶¶ 172–73). Chapman's fingerprint analysis report states that his opinion was "based on my experience as a Fingerprint

Examiner with the Federal Bureau of Investigation from 1976–1978 and my continued examination of fingerprints with the Elkhart County Sheriff's Department" but this was a fabrication. Chapman was never trained and had no FBI experience in conducting latent print comparisons. (Doc. 202 ¶ 174). Chapman testified at Royer's trial as an expert fingerprint analyst consistent with his report. (Doc. 202 ¶¶ 177, 227).

Chapman was used by the Elkhart City Police Department on previous occasions to provide latent handprint opinions that were consistent with their theory of investigation. (Doc. 202 ¶¶ 181–84).

As to the Sheriff's Department, the allegations in the Amended Complaint state as follows. Within the Sheriff's Department, there was a total lack of policies, procedures, training, and supervision over Chapman's latent print analyses. (Doc. 202 ¶ 264). Policymakers and supervisory personnel were aware of and failed to implement any policies, procedures, training, or supervision that would have prevented Chapman from violating criminal defendants' constitutional rights. (Doc. 202 ¶ 265). It was known within the Sheriff's Department that Chapman conducted fingerprint analyses for the Elkhart Police Department, but no supervisor sought to implement any supervision, training, policies, or procedures governing Chapman's work for the EPD. (Doc. 202 ¶ 266). This policy and practice repeated itself in numerous criminal investigations conducted by Chapman at the Elkhart Police Department. (Doc. 202 ¶ 267). Nonetheless, and despite notice to (and often involvement of) policymakers in the above-described unconstitutional policies and

7

practices, there was no effort to rectify any such misconduct. Chapman still remained as a law-enforcement officer within the Sheriff's Department, his misconduct remained undisclosed to criminal defendants like Royer, and he was permitted to act with impunity in criminal investigations. (Doc. 202 ¶ 268). The Sheriff's Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct, thereby perpetuating the unlawful practices and ensuring that no action would be taken (independent of the judicial process) to remedy Royer's ongoing injuries. (Doc. 202 ¶¶ 269–70). The policies and practices were consciously approved by Sheriff's Department policymakers who were deliberately indifferent to the violations of constitutional rights described herein. (Doc. 202 ¶ 271). These policies and practices were the proximate cause of the constitutional injuries that Royer sustained. (Doc. 202 ¶ 272). The Sheriff's Department's failure to train and supervise Chapman effectively condoned, ratified, and sanctioned the kind of misconduct that Chapman committed against Royer. (Doc. 202 ¶ 273).

The Amended Complaint asserts the following claims:

- Count I—42 U.S.C. § 1983 Due Process Chapman (Doc. 202 ¶¶ 280–88).

- Count II—Coercive Interrogation: Fifth and Fourteenth Amendments Becker (Doc. 202 ¶¶ 289–94).

- Count III—42 U.S.C. § 1983 Deprivation of Liberty Without Probable Cause Fourth and Fourteenth Amendments Chapman (Doc. 202 ¶¶ 295–304).

- Count IV—42 U.S.C. § 1983 Failure to Intervene: Becker and Chapman (Doc. 202 ¶¶ 305–09).

- Count V—42 U.S.C. § 1983 Conspiracy to Deprive Constitutional Rights: Becker and Chapman (Doc. 202 ¶¶ 310–16).

- Count VI—42 U.S.C. § 1983 *Monell* Claim Against the Sheriff's Department (Doc. 202 ¶¶ 317–21).

- Count VII—State Law Claim Sheriff's Department Breach of Duty in Hiring, Training and Supervising – Negligence (Doc. 202 ¶¶ 322–25).

- Count VIII—State Law Claim Sheriff's Department Breach of Duty in Hiring – Willful and Wanton Conduct (Doc. 202 ¶¶ 326–29).

- Count IX—Respondeat Superior (against Sheriff's Department) (Doc. 202 ¶¶ 330–31).

- Count X—Intentional Infliction of Emotional Distress: Sheriff's Department and Chapman (Doc. 202 ¶¶ 332–35).

**4.    Statement of Issue**

Whether Royer's Amended Complaint states a § 1983 *Monell* claim against the Sheriff's Department.

**5.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal when no actionable claim is stated. In ruling on such a motion, a court accepts as true all of the well-pled facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). However, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). After "excising" such conclusory allegations, a court determines whether the remaining factual allegations "plausibly suggest an entitlement to relief." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court will grant judgment in a defendant's favor if the

plaintiff does not "state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570).

**6.    The Amended Complaint does not state a § 1983 *Monell* claim against the Sheriff's Department**

To hold a governmental entity liable under § 1983, a plaintiff must demonstrate that the constitutional deprivation was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or by an unwritten custom or practice so well established as to amount to a government policy. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Courts have identified three ways in which a municipality can be liable to a plaintiff for a civil rights violation resulting from government policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) the constitutional injury caused by a person with final policymaking authority. *Abbott v. Vill. of Winthrop Harbor*, 205 F.3d 976, 981 (7th Cir. 2000). *Monell* liability only attaches if the policy, custom or practice, or decision was "the moving force behind the federal-rights violation." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (internal quotation marks omitted).

### 6.1. The Amended Complaint does not state a claim against the Sheriff's Department for *Monell* liability based on express policy or caused by a person with final policymaking authority

Allegations lacking in factual content are insufficient to state a claim. *McCauley*, 671 F.3d at 616 (citations omitted). Moreover, the required level of factual specificity required to state a claim rises with the complexity of the claim. *Id.* This is "both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). In a *Monell* claim, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the [governmental entity] maintained a policy, custom, or practice" that was the moving force behind the plaintiff's constitutional injury. *McCauley*, 671 F.3d at 616.

Royer alleges the actions of Chapman "in fabricating evidence and withholding exculpatory evidence were undertaken pursuant to the policies and practices of the Elkhart County Sheriff's Department, described above, which were created, maintained, or ratified by the policymakers for the Elkhart County Sheriff's Department with final policymaking authority." (Doc. 202 ¶ 318). Not only is this claim devoid of the factual specificity that could allow the Court to reasonably infer that the Sheriff's Department was ultimately responsible for Chapman's alleged fabrication of evidence, but it also fails to put the Sheriff's Department on notice of what role it allegedly played in relation to the referenced policies or practices by failing to identify the referenced final policymaker.

11

The Supreme Court has confirmed that "final policymaking authority" is a question of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 2723, 105 L. Ed. 2d 598 (1989) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 1300, 89 L. Ed. 2d 452 (1986)). State and local law, as well as " 'custom and usage' having the force of law," may illustrate which officials or governmental entities are endowed with final policymaking authority with regard to the action that allegedly caused the particular constitutional or statutory violation. *Jett*, 491 U.S. at 737. In *Eversole v. Steele*, the Seventh Circuit found, under its review of Indiana law, that a county sheriff is the final policymaker in their jurisdiction for law enforcement purposes. 59 F.3d 710, 716 (7th Cir. 1995) (citing *Delk v. Bd. of Comm'rs of Delaware Cnty.*, 503 N.E.2d 436, 440 (Ind. Ct. App. 1987); Ind. Code §§ 36-2-13-1 to 36-2-13-14); *see Escobedo v. Buncich*, No. 2:18 CV 226, 2019 WL 2174234, at *2 (N.D. Ind. May 20, 2019). For example, when considering a *Monell* claim where the plaintiff sought to hold the Hancock County Sheriff's Department liable for the actions of its deputy, the Indiana Court of Appeals found that the sheriff was a final policymaker for purposes of the case at hand. *Trout v. Buie*, 653 N.E.2d 1002, 1007 (Ind. Ct. App. 1995). The Elkhart County Sheriff was the final policymaking authority of the Sheriff's Department during the relevant time period in the instant matter.

Royer neither identifies an express policy of the Sheriff's Department nor alleges that the Elkhart County Sheriff, as final policymaker, was responsible for the fabrication of evidence with enough specificity to allow the Court to infer that

either party was responsible for his alleged constitutional injury. As such, this is an allegation without factual content, and it is insufficient to state a *Monell* claim.

### 6.2. The Amended Complaint does not state a claim against the Sheriff's Department for *Monell* liability based on widespread custom or practice

To allege a "widespread practice" claim, a plaintiff must assert facts sufficient to establish that a pattern of similar deprivations is so "permanent, well-settled, and widespread as to constitute custom or usage." *See Wragg v. Vill. of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010). Such practices must be evidenced by instances "demonstrating a long-standing and widespread practice of constitutional deprivation" noticed or tolerated by policy makers. *Alexander v. City of S. Bend*, 320 F. Supp. 2d 761, 781 (N.D. Ind. 2004), *aff'd,* 433 F.3d 550 (7th Cir. 2006) (citing *Harris v. City of Marion, Ind.*, 79 F.3d 56, 59 (7th Cir. 1996) ("One incident cannot be bootstrapped into a pattern.")); *see, e.g., Roach v. City of Evansville*, 111 F.3d 544, 549 (7th Cir. 1997) (finding that no reasonable jury could infer that a municipal defendant was engaged in a permanent and well-settled practice of depriving residents of their constitutional rights based on isolated incidents occurring in the same case within a very short span of time).

That is, a plaintiff must show that a governmental entity's practice is so widespread that the governmental entity is "deliberately indifferent as to [the] known or obvious consequences" of the practice. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (quoting *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). The Supreme Court has defined deliberate indifference in this context to mean that "a reasonable policymaker [would] conclude that the

plainly obvious consequences" of the governmental entity's actions would result in the deprivation of a federally protected right. *Gable*, 296 F.3d at 537 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). To establish such deliberate indifference, a plaintiff must show a series of constitutional violations, as well as specific facts regarding the violations. *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003). Isolated acts of misconduct by non-policymaking employees are insufficient to establish a widespread practice for *Monell* liability. *Palmer*, 327 F.3d at 596; *see also Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir. 1990) ("[C]ustom . . . implies a habitual practice of a course of action that characteristically is repeated under like circumstances."). The gravamen of liability based on practice or custom "is not individual misconduct by police officers (that is covered elsewhere under § 1983), but a widespread practice that permeates a critical mass of an institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) (emphasis in original).

In the Amended Complaint, there are no factual allegations supporting a *Monell* claim based on practice and custom other than the allegations concerning Chapman's actions for Royer's murder trial. The Amended Complaint does contain allegations that Chapman performed fingerprints analysis for the Elkhart Police Department on prior occasions. (Doc. 202 ¶¶ 181–84). But there are no factual allegations that previous fingerprint analysis conducted by Chapman was flawed, let alone fabricated.

Basing a *Monell* claim on Chapman's actions in Royer's case alone is not sufficient; a plaintiff must allege, generally, multiple incidents of wrongdoing. *Thomas*, 604 F.3d at 303. This requirement aims to ensure that the plaintiff has identified "a true municipal policy . . . not a random event." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). This holds true "[b]oth in 'widespread practice' implicit policy cases and in the cases attacking gaps in express policies." *Id.* Practice and custom claims "based on single events veer close to the respondeat superior theory of liability, which the Supreme Court explicitly rejected in *Monell*." *Walker v. City of Chicago*, 596 F. Supp. 3d 1064 (N.D. Ill. 2022) (citing *Monell*, 436 U.S. at 691; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)). In other words, it takes more than one act to constitute a policy. But Royer has not alleged more.

Finally, for a governmental entity to be liable under *Monell* based on practice or custom, the governmental entity must have been aware of the risk created by the practice or custom and must have failed to take appropriate steps to protect the plaintiff. *Gable*, 296 F.3d at 537–38. To meet the standards of *Twombly*, *Iqbal*, and *McCauley*, Royer must allege facts sufficient to demonstrate (rather than just say) that the Sheriff's Department's final policymaker knew of the alleged widespread practices and chose to effectively adopt those practices as its own. *See Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993). The exercise of discretion by a particular official, standing alone, does not give rise to a conclusion of municipal liability; rather, liability should attach only if the

unconstitutional decision was "a deliberate choice to follow a course of action" and if state or local law authorized the decisionmaker "responsible for establishing final government policy with respect to the subject matter in question." *Id.* If this can be demonstrated, then a "widespread practice [of unconstitutional behavior] . . . would support a conclusion of municipal liability." *Id.* But Royer merely recites, rather than supports, this necessary aspect of his *Monell* claim (Doc. 202 ¶¶ 264–74), and he therefore fails to plead sufficiently as to widespread custom or practice.

### 6.3.  The Amended Complaint does not state a claim against the Sheriff's Department for *Monell* liability based on failure to train

A plaintiff also may take an "alternative path to *Monell* liability" by showing a municipality's policy in the form of its deliberate indifference to the need to train or supervise its employees. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 380 (7th Cir. 2020). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011). To succeed on a failure-to-train theory, a plaintiff must establish that the risk of constitutional violation is "so high and the need for training so obvious that the municipality's failure to act reflects deliberate indifference . . ." *J.K.J.*, 960 F.3d at 380. "In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

Accordingly, in situations that call for procedures, rules, or regulations, the failure to make a policy itself may be actionable; in other words, a practice of unconstitutional conduct, although lacking formal approval, may provide a basis for municipal liability. *Cornfield by Lewis*, 991 F.2d at 1326 (citations omitted); *see also Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372 (7th Cir. 2017) (holding that an institution could be liable for failing to adopt protocols for the coordinated and comprehensive treatment of chronically ill inmates). In this regard, a single isolated incident of wrongdoing by a non-policymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct. *Cornfield by Lewis*, 991 F.2d at 1326 (citing *City of Oklahoma City*, 471 U.S. at 823–24; *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986)). To withstand a motion to dismiss for a failure to make policy, an allegation of a pattern or a series of incidents of unconstitutional conduct is required. *Cornfield by Lewis*, 991 F.2d at 1326 (citing *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981); *accord Jones*, 787 F.2d at 204 (requiring "systemic" faulty inaction)).

As a basis for holding the Sheriff's Department liable under *Monell* it is alleged in the Amended Complaint that: (1) Chapman was unqualified to conduct latent print examinations (Doc. 202 ¶¶ 174, 179–80); (2) that Chapman fabricated the fingerprint analysis used in Royer's criminal trial (Doc. 202 ¶¶ 169, 172, 177–78, 180); that Chapman had done fingerprint analyses for the Elkhart City Police on prior occasions (Doc. 202 ¶¶ 181–82); and that the Sheriff's Department knew Chapman had conducted fingerprint analyses for the Elkhart City Police

17

Department (Doc. 202 ¶ 266). Critically, there are no factual allegations: (1) that any fingerprint analyses conducted by Chapman for the Elkhart City Police prior to the Royer fingerprint analysis were false or fabricated; (2) that the Sheriff knew that any of Chapman's fingerprint analyses (whether conducted for Elkhart City Police or other law enforcement entities) were false or fabricated; (3) that the Sheriff was put on notice that other Sheriff's Department employees had fabricated fingerprint analyses in the past; or (4) that identify a course of training that would have prevented the alleged constitutional violation. And Royer had ample opportunity to plead these allegations in his Complaint and several amended complaints. (Doc. 1; Doc. 100-1; Doc. 173-1; Doc. 186; Doc. 202).

Mere allegations that Chapman was unqualified to perform a fingerprint analysis do not directly support a claim that Chapman violated Royer's constitutional rights. Fabrication of evidence is not based on negligence or even reckless behavior. Rather, fabrication of evidence is an intentional lie. *See Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) ("The essence of a due-process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence . . ."); *see also Sampson v. Lambert*, 903 F.3d 798 (8th Cir. 2018) (fabrication of evidence requires specific intent). Being qualified to perform a fingerprint analysis is not the issue as to whether evidence was fabricated. A highly qualified witness or an underqualified witness could both engage in fabrication of evidence. Moreover, being underqualified or overstating one's qualifications is not a constitutional violation. *See Buie v. McAdory*, 341 F.3d

18

623, 625 (7th Cir. 2003) ("No decision of the Supreme Court "clearly establishes" that experts (or any other witnesses) must be right; the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies. That a witness may give false or mistaken testimony therefore is not an independent constitutional violation.").

However, Chapman's qualifications to conduct a fingerprint analysis are relevant on the issue of whether the final policymaker for the Sheriff's Department—the Sheriff—was deliberately indifferent. *See Escobedo*, 2019 WL 2174234, at *2. Deliberate indifference is a stringent standard "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 61. Generally, to be held liable on a failure to train claim, the governmental entity must have knowledge of a "pattern of tortious conduct demonstrating the need for additional training, 'rather than a one-time negligen[ce].'" *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (citing *Brown*, 520 U.S. at 407–08). But a plaintiff may base a successful claim on a single constitutional violation if the "risk of constitutional violations [is] so high and the need for training so obvious that the municipality's failure to act . . . reflect[s] deliberate indifference and allow[s] an inference of institutional culpability." *J.K.J.*, 960 F.3d at 380.

19

In a prior civil case, Canen, the co-defendant with Royer in his murder trial, sued Chapman. Chapman's qualifications to testify as an expert on fingerprint analysis was an issue. Chapman obtained summary judgment and Canen appealed. In its opinion affirming the grant of summary judgment, the Seventh Circuit Court of Appeals addressed the issue of Chapman's qualifications to give an expert opinion on fingerprint analysis, and it stated that he was qualified:

> The Indiana Supreme Court has clarified that, under the Indiana Rules of Evidence, "[n]o precise quantum of knowledge is required if the witness shows a sufficient acquaintance with the subject." Rather, "[t]he determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court whose rulings will not be disturbed absent an abuse of discretion." "As such, a witness may qualify as an expert on the basis of practical experience alone," and "[a] lack of extensive formal training or experience goes to the weight of the expert testimony rather than to its admissibility," Accordingly, Detective Chapman, an officer trained in known fingerprint analysis by the FBI and the Integrated Indiana Law Enforcement Crime Scene Training School, and who had performed latent fingerprint retrieval and latent fingerprint examinations in the past, qualified as an expert under Indiana's rules of evidence and his testimony was admissible.

*Canen v. Chapman*, 847 F.3d 407, 413–14 (7th Cir. 2017) (internal citations omitted). This determination of Chapman's qualifications in the Canen lawsuit does not operate as res judicata or collateral estoppel in this lawsuit. However, this Court can consider the Seventh Circuit's determination of Chapman's qualifications in the Canen lawsuit under the doctrine of stare decisis. *See Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580 (7th Cir. 2005).

As already noted, the Amended Complaint contains no factual allegations that a sheriff was put on notice based on prior incidents of fabrication of evidence— a pattern of tortious conduct demonstrating the need for additional training—that

Chapman should not conduct fingerprint analyses. Further, the allegations in the Amended Complaint are insufficient to base a claim on a single constitutional violation. If a sheriff, aware that Chapman had the experience reiterated by the Seventh Circuit in the *Canen* opinion, allowed him to conduct fingerprint analysis, this would hardly constitute a situation where the "risk of constitutional violations [is] so high and the need for training so obvious that the municipality's failure to act . . . reflect[s] deliberate indifference and allow[s] an inference of institutional culpability." *J.K.J.*, 960 F.3d at 380. As such, the allegations in the Amended Complaint are insufficient to state a claim under *Monell* based on deliberate indifference to the need to train.

Even if the Amended Complaint adequately alleged the existence of an unconstitutional Sheriff's Department policy and the requisite degree of culpability, Royer does not plausibly allege that any such policy directly *caused* his alleged injuries. *See Brown*, 520 U.S. at 404; *City of Canton, Ohio*, 489 U.S. at 390–91. To prevail on a *Monell* claim, a plaintiff must satisfy a rigorous standard of causation. *Brown*, 520 U.S. at 405. This requires a plaintiff to "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404. If a complaint does not contain sufficient factual allegations showing a "direct causal link between a policy or custom of the Sheriff's Department and the alleged constitutional violations," it is subject to dismissal. *See Est. of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007); *see also Jordan v. City of Chicago*, No. 20-CV-4012, 2021 WL 1962385, at *5 (N.D. Ill. May 17, 2021) (quoting

21

*Iqbal*, 556 U.S. at 678 ("Threadbare recitals of causation 'supported by mere conclusory statements, do not suffice' to plead a plausible claim.")). The Amended Complaint states that the policies and practices of the Sheriff's Department caused Royer's constitutional injuries (Doc. 202 ¶ 272), but there are no factual allegations connecting the alleged policies or failure to train and Royer's constitutional injuries.

## 7.   Conclusion

For the foregoing reasons, the Elkhart County Sheriff's Department requests that the Court dismiss the federal claims of Plaintiff Andrew Royer's Amended Complaint against it and grant all other appropriate relief.

YODER, AINLAY, ULMER & BUCKINGHAM, LLP
Attorneys for Elkhart County Sheriff's Department

 /s/ Michael F. DeBoni
Michael F. DeBoni (#12434-20)
Nathaniel M. Jordan (#23625-20)
Nicholas J. Gerstbauer (#38198-71)
YODER, AINLAY, ULMER & BUCKINGHAM, LLP
130 N. Main Street
Goshen, IN 46527-0575
Telephone: (574) 533-1171
Facsimile: (574) 534-4174
michael.deboni@ya.law
nat.jordan@ya.law
nicholas.gerstbauer@ya.law

**Certificate of Service**

I certify that on June 12, 2024, my office electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record registered to receive same.

 /s/ Michael F. DeBoni
Michael F. DeBoni (#12434-20)