Rod Roberson
*Mayor*

Kris Seymore
*Chief*

City of Elkhart
the city with a heart

*Police Department*
175 Waterfall Dr.
Elkhart, IN 46516

574.295.7070
Fax: 574.293.0679

September 10, 2021

Lieutenant Carlton Conway
175 Waterfall Drive
Elkhart, IN 46516

Re: Notice of Charges, Tentative Hearing Date and Rights

Dear Lieutenant Conway:

I have offered charges of misconduct against you pursuant to Ind. Code § 36-8-3.5-17. I am recommending to the Police Merit Commission that you be terminated from your employment with the Elkhart Police Department.

On April 8, 2021 the Court of Appeals of Indiana issued a published opinion in *State v. Royer* referencing the testimony you provided in connection with the criminal prosecution of Andrew Royer in 2005 and the 2019 Successive Post-Conviction Relief (PCR) proceedings which followed his conviction. 166 N.E. 3d 380 (Ind. Ct. App. Apr. 8, 2021).

The Court of Appeals of Indiana described some of your testimony as perjury, a felony offense under the criminal laws of the State of Indiana.[1] The Court identified your perjurious testimony surrounding the significant and material question whether you provided details to the defendant during the unrecorded portions of your interrogation of him, which he then restated in the recorded portion of the interrogation. The Appellate Court stated in its opinion, reversing Mr. Royer's wrongful murder conviction:

> At Royer's criminal trial Detective Conway denied giving Royer details about Sailor's murder during his interrogations of [Defendant Andrew] Royer:

[1] IC 35-44.1-2-1 Perjury Sec. 1. (a) A person who: (1) makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true; or (2) has knowingly made two (2) or more material statements, in a proceeding before a court or grand jury, which are inconsistent to the degree that one (1) of them is necessarily false; commits perjury, a Level 6 felony. (b) In a prosecution under subsection (a)(2): (1) the indictment or information need not specify which statement is actually false; and (2) the falsity of a statement may be established sufficiently for conviction by proof that the defendant made irreconcilably contradictory statements which are material to the point in question.



Confidential-Subject to Protective Order
in 3:22-CV-00254-JD-MGG

> [State:] When you were interviewing the defendant, Andrew Royer, for the first time on September 3, did you give him any details about Helen Sailor's murder?
>
> [Det. Conway:] No. As a matter of fact, in Mr. Royer's case I made a point not to do it.
>
> [State:] Why not?
>
> [Det. Conway:] I mean, I – we were well aware of Mr. Royer, and . . . we had limited knowledge about his mental background. So I definitely wanted to make a point not to give to Mr. Royer just for the sheer fact that he might go ahead and dispose of the concept that we might have been spoon feeding him information.

(DA Tr. Vol. II at 490-91.)

(*Id.* at 403). Contrary to your previous trial testimony, in the 2019 PCR, you testified in response to questions from Royer's counsel, to the following:

> Q: You were the first one to bring up that he struck Ms. Sailor, correct?
>
> A: Yes sir.
>
> Q: You were the first one to bring up that Ms. Sailor had a substance poured on her, correct?
>
> A: Yes sir.
>
> Q: You were the first to bring up that she was straggled correct?
>
> A: I would have to check my notes; I don't believe that's accurate.
>
> Q: Alright, we'll get there if we haven't already, but you were the first one to bring up that the towels used to clean up the murder scene must have been thrown away in the trash chute or garbage, right?
>
> A: As far as, he was the one that brought up the towels being used to clean up, as far as being disposed of, yes I brought that up.
>
> Q: You were asking detailed questions of Mr. Royer about information that he did not previously provide you, correct?
>
> A: Certain aspects, yes sir.
>
> (PCR Tr. 419:11-422:6).

The Appellate Court *in State v. Royer* noted your contradictory testimony and stated:



Confidential-Subject to Protective Order
in 3:22-CV-00254-JD-MGG

However, Detective Conway's testimony during the evidentiary hearing on Royer's successive petition for post-conviction relief directly contradicted this aspect of his testimony at Royer's trial. As our Indiana Supreme Court has explained, the use of perjured testimony "invokes the highest level of appellate scrutiny," and we will set aside a conviction "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Gordy v. State*, 385 N.E.2d 1145, 1146 (Ind. 1979). Detective Conway acknowledged during Royer's successive petition for post-conviction relief that he was the first person to mention several details of the crime. He suggested Royer struck sailor. He was the first person to mention that towels had been thrown away. Royer did not volunteer any pieces of this information. Yet at Royer's murder trial, Detective Conway testified:

> [State:] Did the Defendant refer to items of – or cleaning up things that were details not released to the public?
>
> [Det. Conway:] Yes, ma'am.
>
> [State:] Were there other details that were not released to the public which the defendant seemed to have intimate knowledge of?
>
> [Det. Conway:] Yes, ma'am.
>
> [State:] What were those?
>
> [Det. Conway:] Locations within the apartment that were rummaged through, where some of the evidence was disposed at.
>
> [State:] Where was that?
>
> [Det. Conway:] Waterfall Highrise has an internal garbage chute that goes to every floor where you can drop items down, and they will go down into a main hopper down – actually adjoined to the building outside the parking lot. Some of the items – some of the towels that were used to clean up the area of the scene were actually thrown in the garbage chute, and we found them in the hopper. He knew this. No one else – we did not ever disseminate that information to him.
>
> [State:] Okay. So there were some details that you kept completely private.
>
> [Det. Conway:] Yes, ma'am.
>
> [State:] Yet he had intimate knowledge.
>
> [Det. Conway:] Absolutely.



Confidential-Subject to Protective Order in 3:22-CV-00254-JD-MGG

(DA Tr. Vol. II at 492-93).

(*Royer,* 166 N.E.3d at 403). The Appellate Court in *State v. Royer* overturned Royer's conviction, citing to your perjurious testimony:

> However, Detective Conway withheld the truth when he attempted to bolster the reliability of Royer's confessions by saying Royer knew details about the murder which were not known to the public. Thus, we hold that Royer was entitled to post-conviction relief due to Detective Conway's misrepresentation to the jury that he did not feed information about the crime to Royer and the State's reliance on Detective Conway's denial during its closing argument to implicate Royer.

(*Id.* at 404). In a rare public rebuke of your egregious conduct which led to the wrongful conviction of Andrew Royer, the Appellate Court stated:

> Detective Conway's false testimony at Royer's trial is particularly galling because he was an Elkhart Police Department detective at the time of Royer's trial and, as of the evidentiary hearing on Royer's successive petition for post-conviction relief, Detective Conway was still employed by the Elkhart Police Department overseeing the juvenile bureau and the special victims unit.

(*Id.* at 404 n.20).

Additionally, the Appellate Court recognized the differences between your 2005 trial testimony regarding your claims of concern for Royer's mental disabilities in the course of your interrogation and your 2019 testimony at the post-conviction hearing in which your testimony reflected a cavalier disregard for Mr. Royer's disabilities.

In your 2005 trial testimony you stated:

> Q: Detective Conway, you indicated that because you were aware of Mr. Royer's challenges mentally that you did speak to some people at Oaklawn. Correct?
>
> A: Yes, ma'am.
>
> Q: After inquiring into his condition further, did you find it was necessary at all to have a representative or someone there on his behalf?
>
> A: No. as a matter of fact, we were told that, that wasn't necessary.

(*State v. Royer,* Tr. 519:16-519:25) Noting this prior testimony, the Appellate Court stated:

> Detective Conway also testified at Royer's criminal trial that he spoke to someone at Oaklawn before interrogating Royer and that individual



Confidential-Subject to Protective Order
in 3:22-CV-00254-JD-MGG

> informed him that it was not necessary to have a counselor present during the interrogation. However, at the evidentiary on Royer's successive petition for post-conviction relief, Detective Conway testified that an Elkhart Housing Authority employee relayed to the Elkhart Police Department that Royer "had a mind of a child," but Detective Conway dismissed this concern as simply "an opinion." (Tr. Vol. II at 202-03.) Royer went on to ask Detective Conway:
>
>> [Royer] Between the time Ms. Snider provided you with this information that she learned from the housing authority and the time that you questioned Andy Royer, so from August 28th to September 3rd, 2003, what investigation did you do to determine whether Mr. Royer was mentally disabled?
>>
>> [Det. Conway:] At that point in time, I don't believe there was really any?
>>
>> [Royer:] You didn't make any phone call to Oaklawn, right?
>>
>> [Det. Conway:] We didn't have any information about any services that he was, that he was, he was, he was obtaining at the time.
>
> (*Id.* at 204.) The State argues Detective Conway's awareness and dismissal of Royer's mental disabilities does not constitute newly discovered evidence because it was known at the time of trial that Royer was interrogated alone and that Royer became confused and fatigued over the course of the interrogation. However, Detective Conway's testimony at trial left the jury with the impression that he took Royer's mental disabilities into account and took protective measures before interrogating Royer; whereas, Detective Conway's testimony during the successive post-conviction evidentiary hearing reveals he cavalierly dismissed such concerns.

(*Royer,* 166 N.E.3d at 405). In other words, the Indiana Court of Appeals found that you either lied about your concerns for Mr. Royer's mental disabilities or cavalierly disregarded them – or both.

The nature and severity of your conduct undermines the very foundation of the criminal justice system. As the Indiana Court of Appeals said in reference to your conduct:

> when law enforcement officers lie under oath, they ignore their publicly funded training, betray their oath of office, and signal to the public at large that *perjury* is something not to be taken seriously. This type of conduct diminishes the



Confidential-Subject to Protective Order in 3:22-CV-00254-JD-MGG

> public trust in law enforcement and is beneath the standard of conduct to be expected of any law enforcement officer.

(*Id.* at 404 n.20). Your conduct amounts to an assault upon the institution of justice which you swore to uphold and constitutes a violation of your oath of office. No measure of discipline for your conduct can restore your credibility within the criminal justice system. As a result, your termination is the only appropriate discipline that can be had. Anything short of your termination would only further diminish the public trust in law enforcement and the standard expected of those entrusted with the duty and the obligation to bear witness in courts of law. You are no longer able perform an essential duty of your job to provide uncompromised testimony in a court of law. Any criminal case you work on is now at risk of dismissal.

Since the Appellate Court decision in *State v. Royer*, at least one federal bank robbery case has been dismissed as a result of you being the lead detective on the case. We have reason to believe that if you were to continue with the Elkhart Police Department, many similar decisions dismissing or pleading down charges would take place when prosecutors weigh their ability to prove your cases, given your inability to testify effectively.

In addition, the Appellate court in *State v. Royer* drew attention to the failure of the State to disclose evidence to Royer's defense counsel regarding your removal from the homicide department after the Royer investigation, due to your superior's concerns that you had managed to interview an attorney's client by falsely telling his attorney that his client was not a suspect, but rather a witness in your investigation. The court held that your superior's concern regarding your misrepresentation which led to your removal from the homicide department was evidence that the State was required to turn over to defense counsel to satisfy the requirements of *Brady v. Maryland*, 373 U.S. 84 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). Your superior's concerns regarding the integrity of your investigations and your credibility continue today.

The Professional Standards Investigation substantiated violations of the following policies:

- Current Policy 320.5.8 (a) & (b) Performance:
    - 320.5.8 (a) Failure to disclose or misrepresenting material facts, or making any false or misleading statement on any application, examination form, or other official document, report or form, or during the course of any work-related investigation.
    - 320.5.8 (b) The falsification of any work-related records, making misleading entries or statements with the intent to deceive, or the willful and unauthorized removal, alteration, destruction and/or mutilation of any department record, public record, book, paper or document.



Confidential-Subject to Protective Order
in 3:22-CV-00254-JD-MGG

- General Order #0005 and General Order #0011 (2004-07)
    - #0005 Exercise of Police Powers: Before exercising our powers, we must carefully weigh all surrounding factors, be humane, cautious and restrained, and above all, avoid intolerance, over enthusiasm and authoritarianism. We must be impartial and act without fear of favor, malice, or ill will. We must show reasonableness concerning the rights of suspects and power of arrest and detention. We must demonstrate absolute integrity in the collection of evidence and reporting of facts.
    - #0011 A Professional Approach: Our reputation will depend on the manner in which we dress, responds and behave. We must protect the character of the Elkhart Police Department and work constantly to maintain its high ideals. We must encourage others to do so by example and leadership, and contribute to its excellence by showing resolution and honesty, whatever the problem faced.
- Business Ethics and Conduct (Elkhart City Policy)
    - The successful operation and reputation of The City is built upon the principles of fair dealing and ethical conduct of our employees. Our reputation for integrity and excellence requires careful observance of the spirit and letter of all applicable laws and regulations, as well as a scrupulous regard for the highest standards of conduct and personal integrity.

      The continued success of the City is dependent upon our citizen's trust and our dedication to preserving that trust. Employees owe a duty to the City and its citizens to act in a way that will merit the continued trust and confidence of the public.

      The City will comply with all applicable laws and regulations and expects its directors, officers, and employees to conduct business in accordance with the letter, spirit, and intent of all relevant laws and to refrain from any illegal, dishonest, or unethical conduct.

      In general, the use of good judgment, based on high ethical principles, will guide you with respect to lines of acceptable conduct. If a situation arises where it is difficult to determine the proper course of action, the matter should be discussed openly with your immediate supervisor and, if necessary, with the Director of Human Resources for advice and consultation.

      Compliance with this policy of business ethics and conduct is the responsibility of every employee. Disregarding or failing to comply with this standard of business ethics and conduct could lead to disciplinary action, up to and including possible termination of employment.



Confidential-Subject to Protective Order
in 3:22-CV-00254-JD-MGG

Based upon these allegations, the offered charges of misconduct against you constitute:

1. Immoral conduct, as that term is used in I.C. §36-8-3.5-17(b)(2)(F).
2. Conduct injurious to the public peace or welfare, as that term is used in I.C. §36-8-3.5-17(b)(2)(G).
3. Conduct unbecoming a member, as that term is used in I.C. §36-8-3.5-17(b)(2)(H).

In addition to the current concerns regarding your integrity and ability to perform an essential function of the job, you have the following history of past discipline:

- March 3, 2021 you received a one-day suspension for violation of policy 1010.5 regarding personnel complaints/documentation and policy 320.5.8 regarding performance. You filed a complaint against Joy Phillips, an officer, and in that complaint misrepresented material facts and made misleading statements. You wrote in the complaint that on July 13, 2020 at approximately 1450 hours you witnessed Det. Phillips leaving the Elkhart Police Department through the CID doors, but actually viewed it on a video after the incident. The Captains Review Board recommended a one-day suspension without pay.

- May 12, 2005 you received a written reprimand for reporting to a random drug screening fifteen (15) days late.

- December 3, 2005 you received a Written Reprimand for Misfeasance for IA case 05-1043. Records indicate you used then Lt. Windbigler's P.I.N. of 4444 since you began at the department. Records indicate you began to use the P.I.N. properly issued to you in March of 2005. However, you continued to use Lt. Windbigler's P.I.N. and your pin from March to September of 2005. You used Lt. Windbigler's P.I.N. to make multiple long distance calls to your girlfriend on department phones. You alleged you did not know the P.I.N. of 4444 belonged to Lt. Windbigler, yet you knew it was not your properly issued P.I.N. and continued to use it.

- On or about May 28, 2011, an incident was documented in RMS by Peggy Snider, wherein you admitted to lying to Det. Hauser so Det. Hauser would not feel bad or have his ego hurt. You told Det. Hauser that Peggy Snider felt comfortable with Det. Hauser attending an emergency CFAC when in fact Officer Snider had made clear to you she did not feel comfortable with Det. Hauser attending the CFAC due to his lack of experience



Confidential-Subject to Protective Order
in 3:22-CV-00254-JD-MGG

Pursuant to Ind. Code 36-8-3.5-17(c) you may request a hearing on this matter. Your request has already been received and documented. Upon receipt of this letter by the Police Merit Commission, the Commission is required to conduct a hearing on this matter within thirty (30) days. The Commission is available to hear this matter on Oct. 6 2021 at 9:00 AM/PM in the Common Council Chambers, Elkhart Municipal Building, 229 S. Second Street, Elkhart, Indiana. At that hearing, you are entitled to be represented by counsel, to call and cross-examine witnesses, to require the production of evidence and to have subpoenas issued, served and executed.

If the Board determines that you are indeed guilty of the misconduct alleged above, it will vote on your sanction. The Chief's recommendation is to terminate your employment with the City of Elkhart Police Department.

Sincerely,

Kris Seymore
Chief of Police

DATE: 9/13/21
APPROVED BY CITY OF ELKHART
POLICE MERIT COMMISSION



Confidential-Subject to Protective Order
in 3:22-CV-00254-JD-MGG